NEW ENGLAND ENERGY INC., et al.,
Plaintiffs, Appellants,

v.

KEYSTONE SHIPPING COMPANY,
Defendant, Appellee.

KEYSTONE SHIPPING COMPANY,
Plaintiff, Appellee,

v.

NEW ENGLAND ENERGY INC.,
Defendant, Appellant.

Nos. 88–1202, 88–1203.

United States Court of Appeals,
First Circuit.

Heard April 7, 1988.

Decided Aug. 24, 1988.

John M. Stevens with whom John H. Henn, Foley, Hoag & Eliot, John F. Sherman, III and Cheryl A. LaFleur, Boston, Mass., were on brief for plaintiffs, appellants.

Rudolph F. Pierce with whom Kitt Sawitsky, Joel R. Leeman, Goulston & Storrs, P.C., Boston, Mass., Raymond J. Burke, Thomas A. Dillon, Jr., Burke & Parsons, New York City, and Ralph G. Hill, were on brief for defendant, appellee.

Before COFFIN, TORRUELLA and SELYA, Circuit Judges.

COFFIN, Circuit Judge.

This case requires us to decide whether federal courts have the power to order consolidation of two arbitrations when the parties' agreements to arbitrate make no

express reference to the issue of consolidation. The district court, although determining that consolidation was appropriate under the circumstances, held that it lacked the power to order consolidation. We have carefully reviewed the authorities and see no compulsion of law or policy barring a district court from issuing such an order, at least when the agreement between the parties is silent and the pertinent state law specifically provides for such. We therefore reverse.

## I.

We shall briefly describe the facts at this point in order to give some context to our discussion, but the primary question before us is a purely legal one and so we need not dwell on the particulars of this case. The parties here are signatories to one of two maritime contracts, both of which provide that disputes arising out of the agreements will be referred to arbitration in Boston "pursuant to the laws relating to arbitration there in force." In one contract, appellant New England Energy Inc. (NEEI) and appellee Keystone Shipping Co. (Keystone) created a joint venture known as the New England Collier Company (NECCO), which became owner and operator of a coal carrying ship named the *Energy Independence.* In the other agreement, appellant New England Power Company (NEP) chartered the *Energy Independence* from the joint venture. Both NEEI and NEP are part of the New England Electric System, an electric utility holding company. Arbitration # 1 is between NEEI and Keystone—the joint venturers—and Arbitration # 2 is between NEP, the ship operator, and NECCO, the joint venture that chartered the ship to NEP.

NEEI and NEP filed an action in state court in January 1988 seeking consolidation of the two arbitrations pursuant to the Massachusetts Uniform Arbitration Act,

Mass.Gen.Laws Ann. ch. 251, § 2A.[1] Keystone removed the action to federal court based on diversity jurisdiction. After a hearing, the district court ruled that the factual circumstances were appropriate for consolidation, but it nevertheless denied the application for consolidation on the ground that it lacked the power to join the cases. The court interpreted the Federal Arbitration Act and Supreme Court precedent to say that, in the absence of a specific provision in the parties' contracts allowing consolidation, federal courts are without power to consolidate arbitrations. The district court implicitly found both that the Act preempted the Massachusetts statute providing for consolidated arbitrations, and that it deprived the court of its power to order consolidation under Fed.R.Civ.P. 42(a). NEEI and NEP then filed this appeal.

After carefully reviewing the Supreme Court cases and considering the policies of the Act, we conclude that consolidation could be ordered in this case pursuant to the Massachusetts arbitration consolidation statute. We need not decide whether a federal court also has the power, under Fed.R.Civ.P. 42(a), to order consolidation in the absence of a state law providing for it. We now turn to our reasons for concluding that Massachusetts law is not preempted in this case.

## II.

The Federal Arbitration Act, 9 U.S.C. §§ 1–14, was passed to ensure that courts would honor the contractual agreements of parties who choose to resolve their disputes by means of the informal arbitration procedure. *See, e.g., Mitsubishi Motors, Inc. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 625–626, 105 S.Ct. 3346, 3353–3354, 87 L.Ed.2d 444 (1985); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219–220,

---

**1.** The statute provides, in relevant part:

A party aggrieved by the failure or refusal of another to agree to consolidate one arbitration proceeding with another or others, for which the method of appointment of the arbitrator or arbitrators is the same ... may apply to the superior court for an order for such consolidation.... [T]he issue shall be decided under the Massachusetts Rules of Civil Procedure governing consolidation and severance of trials and the court shall issue an order accordingly. No provision in any arbitration agreement shall bar or prevent action by the court under this section.

105 S.Ct. 1238, 1241–1242, 84 L.Ed.2d 158 (1985). Section 2 of the Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 provides that once a court is satisfied that a contract provides for arbitration, the court must order the parties "to proceed to arbitration in accordance with the terms of the agreement." *Id.* at § 4. The Act makes no reference to consolidation of arbitrations.

Recognizing that this statute establishes a "federal policy favoring arbitration," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), the United States Supreme Court in a series of recent decisions repeatedly has stressed that courts must " 'rigorously enforce agreements to arbitrate,' " *Shearson/American Express v. McMahon*, — U.S. —, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (quoting *Dean Witter Reynolds*, 470 U.S. at 221, 105 S.Ct. at 1242). *See also Perry v. Thomas*, — U.S. —, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987); *Mitsubishi Motors*, 473 U.S. at 625, 105 S.Ct. at 3353; *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hospital*, 460 U.S. at 24, 103 S.Ct. at 941.

Appellee argues that the principle of strict adherence to arbitration agreements, established by both the Act and the Supreme Court cases, means that unless consolidation is affirmatively approved in the agreement to arbitrate, it may not be ordered, notwithstanding any state law providing for consolidation. Specifically, appellee contends that ordering consolidation in the absence of the parties' explicit consent is barred by section 4 of the Act, which requires courts to enforce arbitration agreements "in accordance with [their] terms." Appellee relies for this proposition on two circuit court decisions holding that a federal court's role in this context is to determine "only whether the contract provides for consolidated arbitration, a question free of the underlying facts [concerning the merits]," *Del E. Webb Construction v. Richardson Hospital Authority*, 823 F.2d 145, 150 (5th Cir.1987). *See also Weyerhaeuser Co. v. Western Seas Shipping Co.*, 743 F.2d 635, 637 (9th Cir.1984). One other circuit has held that federal courts may consolidate arbitrations. *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966 (2d Cir.1975).

■ We note first that, even when federal law applies to an arbitration agreement,[2] the Federal Arbitration Act has never been construed to preempt all state law on arbitration. We do not read the recent series of Supreme Court arbitration cases to establish such a proposition by implication. Those cases concerned only laws that would override the parties' choice to arbitrate rather than litigate in court, in direct conflict with the Act's primary purpose of ensuring the enforcement of privately negotiated arbitration agreements. *See* cases listed *supra* at 3–4. At best, the Supreme Court's decisions support a conclusion that all state laws seeking to *limit* the use of the arbitral process are superseded by federal law. None of the various

---

2. The Federal Arbitration Act governs the validity, enforceability and interpretation of all arbitration contracts involving maritime or interstate commerce transactions, such as those at issue here. This is so even if the parties include a choice of law provision in their contract selecting a particular state's law. *See Southland Corp.*, 465 U.S. at 12, 104 S.Ct. at 859 (Arbitration Act was an exercise of the commerce clause power, thus applicable in federal and state court, citing *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 405, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967)); *Apex Fountain Sales, Inc. v. Kleinfeld*, 818 F.2d 1089, 1094 n. 4 (3d Cir.1987); *Huber, Hunt & Nichols,*

*Inc. v. Architectural Stone Co.*, 625 F.2d 22, 25 n. 8 (5th Cir.1980); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1268–1271 (7th Cir.1976); *Collins Radio Co. v. Ex–Cell–O Corp.*, 467 F.2d 995, 997–999 (8th Cir.1972); *American Airlines, Inc. v. Louisville & Jefferson County Air Board*, 269 F.2d 811, 815–817 (6th Cir.1959). In this case, there is no question concerning the supremacy of the federal Act in determining the *validity and enforceability* of an arbitration clause. Everyone agrees that the federal Act governs those matters, which are not in dispute here. The issue before us is whether state law may supplement that Act on matters collateral to the agreement to arbitrate.

preemption standards suggests that Congress intended the federal Act to supersede all state arbitration law, and appellee Keystone does not argue to the contrary. *See Hyde Park Partners, L.P. v. Connolly,* 839 F.2d 837, 849 (1st Cir.1988) (detailing the "variants" of the preemption doctrine, quoting *Louisiana Public Service Comm'n v. FCC,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986)). *See also Societe Generale de Surveillance v. Raytheon,* 643 F.2d 863, 867 (1st Cir. 1981) (federal Arbitration Act preempts "only that state law inconsistent with its express provisions").

■ Nor do we see a preemption problem between the Act and the particular statute before us, the Massachusetts arbitration consolidation provision. Because the Act says nothing about consolidation, the Massachusetts statute—as appellants seek to enforce it[3]—does not directly conflict with the Act's provisions. Appellee's argument, however, is not that the Act directly contradicts the Massachusetts statute, but that the state law is superseded in this case because the parties' contracts do not provide for consolidation, and an order to consolidate would therefore conflict with the requirement in section four of the federal Act that courts enforce arbitration agreements according to their terms.

We disagree that ordering consolidation pursuant to a state statute when the contract is silent on the subject improperly modifies the agreement struck by the parties in violation of section four. We believe, as appellants argue, that an order not contradicting the contractual terms regarding arbitration is "in accordance with [those] terms." This is certainly true when the language of the arbitration clause is broad and in no way suggests limits on the subjects or parties to the agreed-upon arbitration. *See, e.g., Compania Espanola de Petroleos,* 527 F.2d at 969 ("Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration...."). To borrow appellants' illustration, a person directed to take an early plane to New York would be acting "in accordance with" her instructions whether she flew coach or first class, notwithstanding the instructions' silence on the type of seat to purchase. Our traveler also would not violate her instructions, which were silent on how she was to get to the airport, if she were to take a taxicab. Simply put, arbitration is still arbitration even if it is consolidated arbitration.

■ Moreover, as the Supreme Court has emphasized, the purpose of the Arbitration Act was "to place an arbitration agreement 'upon the same footing as other contracts, where it belongs,'" *Dean Witter Reynolds Inc.,* 470 U.S. at 219, 105 S.Ct. at 1241 (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924)). Under the Federal Rules of Civil Procedure, a federal court may consolidate separate actions pending before it if the actions involve a common question of fact or law. Fed.R.Civ.P. 42(a). There is no limitation on the court's power to consolidate contract actions based on the parties' failure affirmatively to agree to consolidation. *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2383 (1971) (court is given broad discretion to decide whether consolidation is desirable; parties' consent not required). Thus, to the extent that the Act requires a court to treat an arbitration agreement as it would any other contract, consent is not a prerequisite to ordering consolidation.[4] *See Pri-*

3. The statute states that "[n]o provision in any arbitration agreement shall bar or prevent action by the court under this section." Mass.Gen. Laws Ann. ch. 251, § 2A. Because the parties' agreements in this case do not refer to consolidation, we need not address whether federal law bars the state statute from superseding a contractual provision expressly prohibiting consolidation. Supreme Court precedent strongly indicates, however, that state law should not prevail over such a privately negotiated contractual provision. *See, e.g., Mitsubishi Motors,* 473 U.S. at 625, 105 S.Ct. at 3353 ("'The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered....'") (quoting *Dean Witter Reynolds, Inc.,* 470 U.S. at 221, 105 S.Ct. at 1242).

4. We do not mean to suggest a holding that federal courts have the power to consolidate arbitrations under Fed.R.Civ.P. 42(a). We simply are analogizing between the Massachusetts arbitration consolidation statute and Rule 42(a), noting that when each is applicable, contractual

*ma Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 n. 12, 18 L.Ed.2d 1270 (1967) ("the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so").[5]

■ In addition to its argument that section four of the Act prevents a court from ordering consolidation without the parties' consent, appellee also suggests that the Supreme Court in its decisions has decided that the federal Act mandates federal courts to observe a "hands-off" approach to arbitrable claims, i.e., that courts should refrain from any unnecessary involvement with arbitrable claims. This view—which is, in essence, a preemption argument—is reflected in the Fifth and Ninth Circuit cases that hold that a court's role with regard to consolidation is simply to determine whether the parties agreed to it, without regard to the merits of consolidation and without scrutiny of the underlying facts of the parties' disputes. *Weyerhaeuser*, 743 F.2d at 637; *Del E. Webb*, 823 F.2d at 150.

We conclude that neither the Act nor Supreme Court precedent mandates such a narrowly circumscribed role for the courts. The Supreme Court decisions indicate that it may at times be appropriate, and necessary, for a court to consider the factual background of the dispute that will be arbitrated. *See, e.g., Mitsubishi*, 473 U.S. at 621–22, 628, 105 S.Ct. at 3351–52, 3354 (court of appeals, which assessed arbitrability " 'on an allegation-by-allegation basis,' " correctly conducted a 2-step inquiry that involved consideration of the substance of

the parties' dispute). The scrutiny may be for the purpose of deciding whether a claim is arbitrable, or it may be for the purpose of deciding whether two claims should be consolidated.

More particularly, nothing in the recent series of Supreme Court decisions indicates that a state law whose purpose is to promote the expeditious resolution of cases *by means of the arbitral process* is at odds with the policy behind the Federal Arbitration Act. In each of the cases emphasized by the appellee, the justices were faced with competing laws that would have placed claims in the courts instead of in arbitration. Two of those cases involved state law. In *Southland*, the California Supreme Court held that a state franchise investment statute invalidated the parties' agreement to arbitrate certain claims. Similarly, in *Perry*, the California Supreme Court had upheld a state labor law requirement that litigants be provided a judicial forum for resolving wage disputes, despite the existence of a private agreement to arbitrate such disputes. In holding the state laws to be preempted in *Southland* and *Perry*, the Supreme Court observed that "[w]e see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law." *Southland*, 465 U.S. at 11, 104 S.Ct. at 858; *Perry*, 107 S.Ct. at 2525.

The Massachusetts arbitration consolidation provision, as appellants seek to enforce it, does not in any way limit "the broad principle of enforceability" of private agreements to arbitrate. There is no attempt here to divert a case from arbitration

---

consent is not a prerequisite to ordering consolidation.

**5.** We obviously do not view the decision to arbitrate as implicitly rejecting consolidation in addition to general, everyday litigation procedures. At least two courts apparently disagree. *See Weyerhaeuser*, 743 F.2d at 637; *Ore & Chemical Corp. v. Stinnes Interoil, Inc.*, 606 F.Supp. 1510, 1513 (S.D.N.Y.1985). Both refer to the provision in section four of the Act that a court must enforce an arbitration agreement in accordance with its terms, and then quote the following language from *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974):

An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.

In *Scherk*, the issue before the Court was whether to give effect to an arbitration clause providing for arbitration in Paris, France, or to allow an action to continue in federal court in the United States. In making the above quoted statement, the Court simply was noting that basic arbitration procedures differ from judicial ones—and it is only those informal operational procedures that we believe a party affirmatively chooses when agreeing to an arbitration clause.

to court. Massachusetts seeks only to make more efficient the process of arbitrating. Although the Supreme Court has held that agreements to arbitrate must be enforced "even if the result is 'piecemeal' litigation," *Dean Witter Reynolds*, 470 U.S. at 221, 105 S.Ct. at 1242, the Court also has recognized the Act's endorsement of "speedy and efficient decisionmaking," *id.* at 219, 105 S.Ct. at 1241. We fail to see why a state should be prevented from enhancing the efficiency of the arbitral process, so long as the state procedure does not directly conflict with a contractual provision.

 Nor does the Act's general approach indicate that a federal court would overstep its role if it ordered consolidation under state law after determining that the contract does not bar consolidated arbitrations. Because a federal court must have subject matter jurisdiction independent of the Act to hear a case arising under the Act,[6] a finding that a matter is arbitrable does not automatically divest the court of its authority over the case. Indeed, the Act in certain situations empowers the court to choose arbitrators and enforce arbitration subpoenas. *See* 9 U.S.C. §§ 5, 7. Thus, federal courts have jurisdiction to decide more than just the question of arbitrability, and if requested to do so, a court has the power to order compliance with an applicable state law.

We therefore turn now to the question of whether the district court should have ordered consolidation in this case.

### III.

Our assumption in this case is that the parties' contracts are, in fact, silent on the issue of consolidation. Unquestionably, there is no intent manifested against consolidation. Both contracts contain broad provisions calling for arbitration of "[a]ny and all differences and disputes of whatsoever nature." Appellants, however, argue that the contracts evidence an intention to permit consolidation by means of the clause in each providing for arbitration "in the City of Boston pursuant to the laws relating to arbitration there in force." The arbitration laws in force in Boston include not only the federal Act but also the Massachusetts arbitration consolidation statute. Thus, appellants suggest that the parties affirmatively agreed to the possibility of consolidation.

We need not rest our decision on these contractual clauses, however, because we have concluded that consent is not a prerequisite to application of the Massachusetts consolidation statute. Our task, therefore, is simply to determine whether the district court correctly found that the two arbitrations at issue here meet the requirements for consolidation.[7]

 Massachusetts law provides that the issue of consolidation shall be decided under Mass.Rule Civ.P. 42, which follows federal law and allows consolidation if there is a common question of law or fact. If this requirement is met, a court typically has broad discretion to decide whether consolidation is appropriate. *See, e.g., Sutcliffe Storage & Warehouse Co. v. U.S.*, 162 F.2d 849, 851 (1st Cir.1947); 9 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2383 (1971).

 At this point, it is appropriate to add more facts to those we sketched briefly in Section I *supra.*[8] The joint venture be-

---

6. The Federal Arbitration Act creates federal substantive law *requiring the parties to honor* arbitration agreements, but it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise. *Southland Corp.*, 465 U.S. at 15 n. 9, 104 S.Ct. at 861 n. 9; *Moses H. Cone Memorial Hospital*, 460 U.S. at 25 n. 32, 103 S.Ct. at 942 n. 32.

7. Although the district court's finding that consolidation was appropriate was rendered irrelevant by its conclusion that it lacked the power to consolidate, we see no reason to remand the case for the court to reconsider the issue. The court expressly found in favor of consolidation, and we think it inevitable that, upon remand on the same facts, the court would simply enter a final judgment ordering consolidation. In the interest of efficiency, we address the question at this juncture.

8. These facts are drawn largely from appellants' brief, but also include matters appearing in appellee's papers contained in the record. Our belief is that there is no dispute over the facts we describe.

tween Keystone and NEEI was for the purpose of constructing, owning and operating a coal ship and time chartering it to NEP on a long term basis. The joint venture agreement provides that NEEI holds the majority interest in NECCO, the joint venture company, and controls two votes on NECCO's management committee to Keystone's one vote. The time charter between NECCO and NEP, which was for a term of 24 and one-half years, identified a procedure for setting the ship's rate of hire on an annual basis. This "annual fixed rate" was to be 90 percent of the then current market rate for comparable time charters of comparable vessels engaged in the same trade over the same route. The contract calls the comparable vessels "relevant fixtures."

Beginning in 1984, disputes arose over the annual fixed rate, particularly concerning which other vessels qualified as relevant fixtures. For the years 1984 through 1986, NEEI agreed with NEP's proposal, while Keystone's representative initially disagreed but ultimately accepted the rate. For 1987, Keystone maintained its objection to the proposed rate, but because NEEI controlled the management committee, the rate was adopted by a 2–1 vote.

In October 1987, Keystone gave notice of Arbitration #1 against NEEI, alleging that NEEI repeatedly has breached its fiduciary duty to Keystone. Keystone contends that NEEI has favored NEP's interests over those of the joint venture, NECCO, particularly with regard to the charter rates. NEEI and NEP are both subsidiaries of the New England Electric System (NEES).

Sometime after this first arbitration was set in motion, NEP proposed its annual fixed rate for 1988. Although NEEI agreed with the proposal, its two representatives abstained from voting for it because Arbitration #1 was pending. Keystone voted against the rate, but no agreement was reached with NEP because two votes were needed for a decision. In December 1987, NEP noticed its intent to arbitrate the 1988 rate of hire for the *Energy Independence*, which became Arbitration #2.

NEEI and NEP claim that consolidating the two arbitrations is appropriate because both involve common questions of fact and law concerning the proper rate of hire for the *Energy Independence*. As a result, there is the risk of inconsistent results. They also claim that the real parties in interest, NEES on the one hand (specifically represented by NEEI and NEP), and Keystone on the other, are the same in each dispute.

Keystone responds that the two arbitrations fail to satisfy the criteria for consolidation because the parties in each are different—notwithstanding the joint parenthood of NEEI and NEP—and the issues are "wholly different." In addition, Keystone notes that hearings must be held in Arbitration #1 to determine who should appoint NECCO's arbitrator, and control NECCO's role, in Arbitration #2. At oral argument, Keystone stated that it opposed consolidation for fear that the fiduciary duty questions would get lost among the more technical matters concerning the rate of hire.

We cannot say that the district court abused its discretion in concluding that the two arbitrations should be consolidated. Both will necessarily involve resolution of the rate of hire questions, and the possibility of inconsistent results seems real. As appellants point out, even formally NEEI is a participant in each of the two arbitrations, individually in one and as a co-venturer in the other. Although Arbitration #1 will entail consideration of more issues and different law from Arbitration #2, which is limited to the question of the 1988 rate of hire, complete identity of the cases is not a prerequisite to consolidation. Moreover, we are unpersuaded that consolidation of the cases necessarily would diminish the attention given to Keystone's fiduciary duty claims. We presume Keystone will vigorously argue its position, and that the arbitrators will therefore give it full consideration.

As to Keystone's argument that proceedings in Arbitration #1 must be held before Arbitration #2 may begin in order to determine who has the authority to appoint NECCO's arbitrator in the later-noticed ar-

bitration, we do not believe this is a sufficient basis for reversing the district court's finding that consolidation is appropriate. Our assumption is that the arbitrators selected for Arbitration #1 could set the consolidated arbitrations in motion by deciding upon the selection of arbitrators for Arbitration #2. Once all arbitrators have been appointed, the merits of the cases could be heard. The district court may have other ideas, however, about how the consolidated arbitrations should proceed, and we leave that decision to it in the first instance.[9]

*Reversed and remanded for further proceedings not inconsistent with this opinion.*[10]

SELYA, Circuit Judge (dissenting).

I respectfully dissent. Although the question posed in these appeals is not free from doubt, I take a more isthmian view of it than do my colleagues.

The Federal Arbitration Act cuts quite a precise pattern, leaving little room for judicial embroidery. It specifically directs that, if there is "an agreement for arbitration ... made in writing and ... a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration *in accordance with the terms [of the agreement].*" 9 U.S.C. § 4 (emphasis supplied). In crafting this provision, Congress' "preeminent concern ... was to enforce private agreements into which parties had entered...." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1283, 1242, 84 L.Ed.2d 158 (1985). The Supreme Court has repeatedly instructed that if such agreements exist, they must be enforced rigorously. *E.g., Perry v. Thomas,* — U.S. —, 107 S.Ct. 2520, 2526, 96 L.Ed.2d 426 (1987); *Byrd,* 470 U.S. at 221,

105 S.Ct. at 1242. Wonted considerations of administrative efficacy and the like do not weigh in this unique balance; the Act "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) (emphasis in original).

Here, there are two separate agreements, involving somewhat different parties. Both agreements contain arbitral clauses and are, concededly, subject to the Act. Neither agreement provides for consolidation. Absent such a provision, the duty rigorously to enforce the agreements "in accordance with the terms thereof," 9 U.S.C. § 4, does not allow us to substitute our judgment for that of the parties and order the proceedings consolidated. *Accord Del E. Webb Const. v. Richardson Hospital Auth.,* 823 F.2d 145, 150 (5th Cir. 1987); *Weyerhaeuser Co. v. Western Seas Shipping Co.,* 743 F.2d 635, 636–637 (9th Cir.), *cert. denied,* 469 U.S. 1061, 105 S.Ct. 544, 83 L.Ed.2d 431 (1984); *Ore & Chemical Corp. v. Stinnes Interoil, Inc.,* 606 F.Supp. 1510, 1512–1515 (S.D.N.Y.1985).[1] Nor can the happenstance that a state has a law allowing consolidation—or mandating it, for that matter—command a different result.

I need not paint the lily. Consolidation is an action which can have important consequences, especially where—as here—the parties and issues are not identical. It is a course which, in cases falling within the ambit of the Federal Arbitration Act, must be left to the parties' negotiations. By fashioning an arbitral clause which omits reference to consolidation, the parties have made a choice. By imposing consolidation *ab extra,* the majority trumps that choice. Rather than order the parties to hold the

---

**9.** The district court is, of course, free to reconsider its finding on the propriety of consolidation if factors not originally brought to its attention now convince it that consolidation would be inappropriate.

**10.** Case No. 88–1203, concerning appointment by the court of a third arbitrator for Arbitration #1, also is remanded to the district court for further consideration in light of this opinion.

**1.** In *Ore & Chemical Corp.,* the district court within the Second Circuit expressly declined to follow the decision in *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.,* 527 F.2d 966 (2d Cir.1975), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976)—a decision upon which my brethren rely. Judge Edelstein termed *Nereus* "no longer good law" and "contrary to recent Supreme Court pronouncements on the scope of the Federal Arbitration Act." 606 F.Supp. at 1512. I agree.

arbitration to which they consented, as the Act suggests, the court disrupts the negotiated risk/benefit allocation and directs them to proceed with a different sort of arbitration. Perhaps the consolidated arbitration will prove to be better conceived, or more efficient—but it is not what the parties agreed to undertake.

There is a second reason why my colleagues' decision strikes me as wrong. In leaving the dimensions of the changed bargain to the vagaries of state law, the majority demeans the quintessentially *federal* nature of the rule of decision. *See Perry,* 107 S.Ct. at 2527 n. 9. In my mind, judicial recourse to a salmagundi of differing state arbitration laws countervails the objectives of the Federal Arbitration Act. Put another way, superimposing Massachusetts' pro-consolidation policy on the expressed wishes of the contracting parties unduly exalts state law and, in the process, subverts the concept of "creat[ing] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hospital,* 460 U.S. at 24, 103 S.Ct. at 865. *See also Mitsubishi Motors v. Soler Chrysler–Plymouth,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (same). In my estimation, Congress did not intend that the state-law camel could so obtrusively stick its nose into the federal-law tent. *See generally Southland Corp. v. Keating,* 465 U.S. 1, 13, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984) (Congress "contemplated a broad reach of the Act, unencumbered by state-law constraints"); *Kroog v. Mait,* 712 F.2d 1148, 1154 n. 5 (7th Cir.1983) ("there is no indication that Congress has chosen to temper the imperatives of the Federal Arbitration Act with respect for *state* policies regarding informal dispute resolution") (emphasis in original), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984).

The Federal Arbitration Act necessitates that we enforce the parties' bargain as they wrote it—nothing more. Neither the language of the statute nor the decisions of the Supreme Court leave the door ajar for reshaping the bargain based on state law. Because I think that the district court correctly gauged the impropriety of ordering consolidation absent a provision to that effect in the agreements, I would affirm the judgments below.[2]

2. Fed.R.Civ.P. 42(a) does not compel a contrary result. That procedural rule provides for consolidation "[w]hen actions ... are pending before the court...." *Id.* Palpably, the two sets of arbitration proceedings were not triable to, or pending before, the district court on the merits. Accordingly, Rule 42(a) does not empower their consolidation. *See Ore & Chemical Corp.,* 606 F.Supp. at 1514–15 & n. 3.