**SHEARSON LEHMAN BROTHERS, INC., Gerald W. Helmich and Larry J. McKenny, Plaintiffs,**

v.

**Jane BRADY, Defendant.**

**Civ. A. No. 91–12228–K.**

United States District Court, D. Massachusetts.

Nov. 21, 1991.

Supplemental Opinion Jan. 8, 1992.

Final Judgment Jan. 15, 1992.

---

John Roger Snyder, Bingham, Dana & Gould, Boston, Mass., for plaintiffs.

Harvey J. Wolkoff, Ropes & Gray, Boston, Mass., for. defendant.

## OPINION

KEETON, District Judge.

The parties have presented to this court a threshold procedural dispute over defendant Jane Brady's effort to initiate, in the Boston office of the American Arbitration Association ("AAA"), an arbitration of her underlying substantive dispute with plaintiffs over the merits of her claim against the plaintiffs under a brokerage contract. This threshold dispute concerns the interpretation and application of a contractual provision for arbitration.

The submissions of the parties present a thicket of arguments and counter-arguments about alleged conflicts among federal statutory law, federal common law, federal regulation, state law, preemption, conflict of laws and other choice-of-law rules, and differing proposed interpretations of various elements of the contract between the parties. A journey through the thicket is tempting. But the growing thickness of the court file, enhanced by a motion for immediate preliminary injunction filed after oral argument on all matters previously pending, dramatically calls attention to the risks of more costs and delays before any tribunal hears the underlying substantive dispute. In these circumstances, I con-

clude that the best course to take is a clear and short path to a Final Judgment of declaratory relief.

Viewed broadly, and independently of the precise questions focussed by the submissions of the parties, this case may be seen as potentially involving a very large number of issues concerning what orders a United States District Court may appropriately enter in advance of arbitration, to govern the scope and procedures of arbitration pursuant to a pre-dispute arbitration provision in a brokerage contract. The range of issues may quickly become more limited, however, if some initial questions are answered in a way that makes other issues either premature or moot. For example, some threshold questions are these:

1. May a court accept jurisdiction to declare that the underlying dispute is arbitrable? Supreme Court precedent supports an affirmative answer, at least if there is a genuine dispute about this issue. *See, e.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983).

2. How should the first question be answered, however, if it appears that all parties agree that the underlying dispute is arbitrable and differ only about purely procedural issues such as (1) how the arbitration may or must be initiated, and (2) under what rules, before what arbitrators, and where the arbitration must be held? In these circumstances, should the court (a) dismiss all requests for immediate adjudication, before arbitration commences, of disputes about the arbitration procedures, or (b) undertake to decide some or all of the procedural disputes?

3. May the court properly decide one or more, but not all, of the procedural disputes, selecting among them with the purpose of serving "the statutory policy [manifested in the Federal Arbitration Act] of rapid and unobstructed enforcement of arbitration agreements," *Moses H. Cone*, 460 U.S. at 23, 103 S.Ct. at 941?

For reasons explained in this opinion, I conclude that even if arbitrability of the underlying dispute is not genuinely contested, this court should nevertheless take jurisdiction, answer yes to question three, de-cide what is commonly called the "AMEX window issue," dismiss all requests of the parties for further rulings in advance of arbitration, and decline also to make any rulings at this time about whether and to what extent judicial review or enforcement may be available during, or after completion of, arbitration. Thus, I decide only that the underlying dispute between the parties is arbitrable and that Brady was free to elect arbitration before AAA. I leave other issues in dispute to be addressed, in the first instance at least, by AAA and the arbitrators selected under its procedures.

Because neither party has formally requested a final judgment of this exact content (the defendant having asked for dismissal and the plaintiffs having asked only for incomplete injunctive relief), before entering final judgment I will allow the parties a brief opportunity to show cause, if any there be, why final judgment should not be entered in the form and for the reasons stated in this Opinion.

I.

Plaintiffs, Shearson Lehman Brothers, Inc., Gerald W. Helmich, and Larry J. McKenny ("Shearson and Employees") filed this action on August 21, 1991, alleging jurisdiction pursuant to 28 U.S.C. § 1331 and Section 4 of the Federal Arbitration Act ("FAA"). They seek equitable relief terminating an arbitration proceeding that defendant Jane Brady ("Brady") commenced with AAA by filing papers in its Boston office on June 21, 1991.

Brady asserts that her attempt to initiate arbitration was in compliance with the pre-dispute arbitration clause of the brokerage contract. Shearson and Employees contend that the contract clause required any arbitration to occur before one of the "self-regulating-organizations" ("SRO's") recognized under federal regulations promulgated by the Securities and Exchange Commission. The relevant SRO's are the Board of Directors of the New York Stock Exchange, Inc. ("NYSE"), the National Association of Securities Dealers, Inc. ("NASD"), and the Board of Directors of

the American Stock Exchange, Inc. ("AMEX"). In addition to an order terminating proceedings under Brady's initiative of June 21, 1991, Shearson and Employees ask for a declaratory judgment stating (1) that if Brady is allowed to initiate arbitration she be required to do so before one of the SRO's referred to in the pre-dispute agreement of the parties and (2) alternatively, if she is allowed to invoke arbitration through AAA she must apply to AAA in the City of New York and the arbitration must be held there.

## II.

Brady's account with Shearson and Employees was governed by a contract ("the Agreement" or "the agreement between the parties") that included a section captioned "ARBITRATION AND GOVERNING LAW." In this section was the following choice-of-law provision:

> The agreement shall be governed by the law of the State of New York without giving effect to the choice of law or conflict of laws provisions thereof.

Docket No. 5, Exhibit B. Also in this section was the following provision ("Arbitration Provision"):

> Any controversy arising out of or relating to any of my accounts, to transactions with you, your officers, directors, agents and/or employees for me, or to this agreement, or the breach thereof ... shall be settled by arbitration, in accordance with the rules then in effect of the NASD, or the Boards of Directors of the NYSE or the American Stock Exchange, Inc., as I may elect....

Docket No. 5 at 5.

Shearson and Employees claim that by attempting to initiate arbitration proceedings through AAA Brady has acted contrary to the terms of the Arbitration Provision. The manifested intent, they say, is that Brady may invoke arbitration only before one of the SRO's—that is, before NASD, NYSE or AMEX.

Defendant Brady responds that the brokerage contract says she is not limited to arbitration *before* one of the SRO's and may instead elect arbitration "in accordance with the rules then in effect" of any

one of the three SRO's. She calls attention to a provision in Article VIII, § 2(c) of the AMEX Constitution, commonly referred to as the "AMEX window", declaring that a "customer" may elect arbitration under the procedures of AAA. She further claims that it is for AAA or the arbitrators to decide where the arbitration proceedings are to be held.

## III.

A *dispute as to arbitrability* of an underlying substantive dispute such as that between plaintiffs and defendant may be heard and decided in this court. *Moses H. Cone,* 460 U.S. at 20, 103 S.Ct. at 939; *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). In the case at bar, the underlying substantive dispute between the parties concerns a claim of securities fraud. It is, in the language of the contract, a "controversy arising out of or relating to any of my accounts [or] transactions with you," and "shall be settled by arbitration...."

It is not entirely clear that Shearson and Employees dispute the arbitrability of the underlying substantive dispute. Perhaps their complaint and request for relief assert only that she has forfeited her right to arbitration or, alternatively, has made an ineffectual false start. In any event, I conclude that their challenge to her initiative makes it appropriate for this court to accept jurisdiction to enter a judgment declaring that the underlying dispute is arbitrable and that nothing Brady has thus far done or failed to do has forfeited her right to arbitration pursuant to her initiative.

Plaintiffs' complaint explicitly requests that this court decide two subsidiary issues regarding arbitration—that is, what entity should host the arbitration (the AMEX window question) and where the arbitration should be held. A question exists as to whether this is a proper forum for deciding disputes over these subsidiary issues. The plaintiffs are implicitly asking this court to rule that these issues (a) are not arbitrable (that is, they are not subject to being decided by the arbitrators selected pursuant to

the arbitration provision of the contract between the parties) and (b) are not subject to being decided by AAA pursuant to the AMEX window and the arbitration provision of the contract between the parties.

## IV.

■ Since all parties rigorously pressed their "AMEX window" arguments before this court, one might infer that they do not contest this court's jurisdiction to decide the AMEX window question. But defendant apparently makes this concession only in the alternative. Her primary position, asserted in a motion to dismiss, is that this civil action initiated by Shearson and Employees is not a valid civil action under 9 U.S.C. § 4, because her choice to arbitrate before AAA is not a "failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" within the meaning of 9 U.S.C. § 4. I conclude that her motion to dismiss on this ground must be denied. Although I conclude, for reasons stated in part V below, that the Arbitration Provision expresses a manifested intent to allow arbitration before arbitrators selected pursuant to AAA's procedures, a party who contends otherwise could reasonably view a willingness to arbitrate only "before" AAA instead of one of the SRO's named in the Arbitration Provision as a refusal to arbitrate *under the written agreement. See Bear Stearns & Co. v. N.H. Karol & Associates, Ltd.*, 728 F.Supp. 499, 502 (N.D.Ill.1989). Moreover, the parties have cited a plethora of cases in which both state and federal courts have decided the AMEX window question, each court having implicitly decided that it was within its jurisdiction to decide the question. *See, e.g., PaineWebber Inc. v. Rutherford*, 903 F.2d 106 (2d Cir.1990) (AMEX window *closed*); *Merrill Lynch v. Georgiadis*, 903 F.2d 109 (2d Cir.1990) (AMEX window *closed*) (citing, *inter alia, Piltch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 714 F.Supp. 537 (D.D.C.1989) (AMEX window *closed*) and *Hybert v. Shearson Lehman/American Express, Inc.*, No. 84–C–10327, 1989 WL 64450 (N.D.Ill. June 7, 1989) (AMEX window *closed*)); *PaineWebber Inc. v. Pitchford*, 721 F.Supp. 542 (S.D.N.Y.1989) (AMEX window *closed*);

*Bear Stearns & Co.*, 728 F.Supp. at 499 (AMEX window *closed*); *In the Matter of Cowen & Company v. Anderson*, 76 N.Y.2d 318, 559 N.Y.S.2d 225, 558 N.E.2d 27, 29 (1990) (AMEX window *open*); *PaineWebber Inc. v. American Arbitration Association*, 217 Conn. 182, 585 A.2d 654, 657 (1991) (AMEX window *open*); *Accord/Joseph v. Prudential Bache Securities, Inc.*, C.A. No. CI909–7284 (Fla.App. May 1, 1991) (AMEX window *open*).

I recognize the possibility that this issue, as well as other issues about initiating and conducting the arbitration, might appropriately be left to some other forum than this court. For example, an alternative to this court's deciding the AMEX window question would be to allow AAA, or arbitrators chosen under AAA procedures, to decide it. However, since they would be deciding a disputable question regarding their own authority to make such decisions, an argument for some right of appeal or review would be compelling. Moreover, to have them decide this issue subject to pre-arbitration appeal or review would be more likely to produce delay and added cost than having the issue adjudicated here and now. Though an appeal in this case may be likely, once the issue is settled, prompt disposition of this case and similar disputes in the future could be expected.

Another objection to leaving the AMEX window issue to be resolved through arbitration is that any set of arbitrators convened to decide it, at the initiative of one of the parties, might be perceived to be biased by the very fact that they were selected under one or another of the procedures in dispute, the validity of each of which depends on resolution of the AMEX window question. This factor, also, weighs in favor of this court's accepting jurisdiction and deciding this issue forthwith.

In *Moses H. Cone, supra,* the court recognized "Congress's clear intent in the Arbitration Act to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." 460 U.S. at 22, 103 S.Ct. at 940. I conclude that a decision of the AMEX win-

dow issue in this forum best serves that declared policy.

## V.

### A.

■ A commonsense reading of the Arbitration Provision of the contract and Article VIII, § 2(c) of the AMEX Constitution supports arbitration under the procedures of AAA, pursuant to the AMEX window. Article VIII, § 2(c) of the AMEX Constitution, one of the "rules ... in effect" of AMEX, unambiguously says that any "customer" may initiate arbitration through the procedures of AAA "unless the customer has *expressly* agreed, in writing, to submit only to the arbitration procedure of the [American Stock Exchange]." (Emphasis added.) Shearson and Employees do not contest that Brady is a "customer" within the meaning of Article VIII, § 2(c).

The Arbitration Provision in this case contrasts with provisions in cases cited by the plaintiffs, such as *Merrill Lynch v. Georgiadis*, 903 F.2d at 110, in which the contract allowed the customer to elect arbitration "only before" NASD, NYSE, or AMEX. Here, the express agreement does not limit Brady's choice of forum to one of the enumerated SRO's. Rather, it says the arbitration shall be "in accordance with the rules then in effect" of one of the enumerated SRO's. The rules of AMEX allow for arbitration before AAA—more precisely, before arbitrators selected pursuant to AAA procedures.

### B.

The parties in this case have filed exhaustive briefs as to whether New York law should control decision of the AMEX window question in this case by reason of the choice-of-law provision in the parties' contract, quoted in Part II above, declaring that "[t]he agreement shall be governed by the laws of the State of New York without giving effect to the choice of law or conflict of laws provisions thereof." Does this provision mean that the parties have agreed that New York law applies to all issues bearing upon arbitration between them? If so, is the application of New York law nevertheless precluded by some preemptive rule of federal law, statutory or decisional?

I conclude that I need not resolve questions such as these regarding meaning and enforceability of this choice-of-law provision as it might apply, for example, to the AMEX window issue in this case. I conclude that the AMEX window is open regardless of how these questions are answered.

The New York Court of Appeals has declared the AMEX window open. *In the Matter of Cowen & Company v. Anderson*, 76 N.Y.2d 318, 559 N.Y.S.2d 225, 558 N.E.2d 27, 29 (1990) (distinguishing *Merrill Lynch v. Georgiadis, supra*, because the arbitration provision at issue there provided that "any controversy between us ... shall be settled by arbitration *only before* ... [NASD, NYSE, or AMEX] (emphasis by the New York Court of Appeals)). If *Anderson* is not controlling in this case under a proper interpretation of the choice-of-law clause in the contract, it is at least persuasive support for the straightforward interpretation of the parties' agreement to arbitrate that I have stated above, Part V.A.

■ I acknowledge that the Second Circuit's decision in *PaineWebber, Inc. v. Rutherford, supra*, may be interpreted as reaching a different conclusion from mine about the AMEX window. If *Rutherford* is to be so interpreted, however, it probably should be understood as an application of federal law rather than law of the State of New York. Also, the *Rutherford* opinion involves no reference to whether the contract at issue contained an applicable choice-of-law provision, or what effect such a provision might have. Moreover, *Rutherford* does not purport explicitly to apply a rule of federal preemption on this issue, and I conclude that declaring federal preemption here would be contrary to recent guidance from both the Supreme Court and the Court of Appeals for the First Circuit, to which I must adhere. *See, e.g., Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 476, 477–79, 109 S.Ct. 1248, 1254, 1254–56, 103 L.Ed.2d 488 (1989); *New England Energy, Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 4 (1st Cir.1988). It is true that recent "decisions

support a conclusion that all state laws seeking to *limit* the use of the arbitral process are superseded by federal law," *New England Energy*, 855 F.2d at 4 (emphasis in original), but opinions so declaring have also emphasized the limited nature of the FAA preemption of state law and do not support preemption of state law rules that are designed not to limit, but to foster and promote arbitration in accordance with a pre-dispute contractual agreement of the parties. *Id.* at 6.

## VI.

I conclude that it is appropriate for this court to dismiss without prejudice the requests of the parties to decide other issues. The inherent risks of cost and delay before arbitration could commence, should a trial court undertake to decide, subject to appeal to higher courts, disputes concerning where an application must be filed and where the arbitration must be held, are fundamentally inconsistent with the parties' agreement to resolve their disputes by arbitration. The magnitude of the potential cost and delay associated with litigating these issues in the courts is suggested by a brief recitation of issues presented by the contentions in this case.

■ Does 9 U.S.C. § 4 authorize judicial resolution of issues regarding procedures tangential to a fundamental refusal to arbitrate according to the terms of the arbitration agreement, such as the issue of the situs of the arbitration? *See Aaacon Auto Transport, Inc. v. Barnes*, 603 F.Supp. 1347 (S.D.N.Y.1985) (holding that the language of 9 U.S.C. § 4, "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration ...," does not authorize courts to resolve an issue such as the situs of an arbitration proceeding).

Should a court in a district that does not include New York City undertake to order that an arbitration under the auspices of AAA must take place in New York City? Section 4 of the FAA provides that if a court decides that one party has failed to arbitrate according to the agreement between the parties, the court shall order arbitration, but "the hearings and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. *See National Iranian Oil Co. v. Ashland Oil*, 641 F.Supp. 211, 213 (S.D.Miss.1986) ("The district court's power is, however, limited to ordering arbitration proceedings 'within the district in which the petition for an order directing such arbitration is filed.'"). May the place of arbitration be decided by a race to courthouses of different districts?

If a court may in some circumstances decide whether situs is arbitrable or is instead subject to decision in court, may the parties contract away the right to go to court for such a decision by agreeing that a dispute over site is arbitrable? *Compare Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir.1989) ("*[o]rdinarily*" a party to a distributorship agreement "would be entitled to have [issues of arbitrability] resolved by a court") (emphasis added) (citing, *inter alia, I.S. Joseph Co., Inc. v. Michigan Sugar Co.*, 803 F.2d 396, 399–400 (8th Cir.1986)) *with Moses H. Cone*, 460 U.S. at 25, 103 S.Ct. at 941 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or like defense to arbitrability.").

It is difficult indeed to square threshold judicial resolution of a complex set of issues such as these with "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone*, 460 U.S. at 22, 103 S.Ct. at 940. A submission before this court indicates that AAA is prepared to decide the appropriate situs of the arbitration pursuant to a number of neutral, commonsense factors, including the location of the parties, the location of the witnesses and documents, a consideration of the relative cost to the parties, the place of performance of the contract, and the laws applicable to the parties. Docket No. 1, Exhibit B. This process seems likely to be fair and far less expensive than threshold

determination of the issue of situs in courts. I do not infer from plaintiffs' rejection of this procedure in favor of litigation in federal court that the plaintiffs' purpose was "vexatious or reactive," *see Villa Marina Yacht Sales, Inc. v. Hattaras Yachts,* 947 F.2d 529, 533 (1st Cir.1991) (discussing the motivation underlying the bringing of a suit as a factor to be used in determining whether the court should abstain from accepting jurisdiction over a claim), but their request does call attention to the potential risk of a type of forum-shopping that is at odds with quick and final resolution of the underlying dispute by arbitration.

Though I have reasoned my decision on other grounds, the conclusion might also be described, in language recently used by the First Circuit, as an "abstention-like" determination. *Id.* After such a determination, it may happen that the disputed issues are resolved promptly and finally in another forum, to the satisfaction of the parties. If this prospect does not materialize, the Final Judgment to be entered in this case at this time will not preclude a disappointed party from asking the court, by motion for reopening of this case, to decide at that time whether it can properly adjudicate the disputed issues.

I am sensitive to the fact that a district court is under a mandate to exercise its jurisdiction to direct parties to proceed to arbitration. *See Dean Witter,* 470 U.S. at 218, 105 S.Ct. at 1241 ("By its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). The abstention-like determination I make here, however, is not a failure or refusal to enforce an agreement to arbitrate. Rather, in the circumstances of this case, such an abstention-like determination respects and furthers the agreement to arbitrate the substantive issues in dispute promptly and according to its terms. A commonsense understanding of "the statutory policy of *rapid* and *unobstructed* enforcement of arbitration agreements," *Moses H. Cone,* 460 U.S. at 23, 103 S.Ct. at 941 (emphasis

added), suggests that in order rigorously to enforce agreements to arbitrate, a court must be vigilant to decline an invitation, by a party who is reluctant to arbitrate pursuant to the written agreement, to sidetrack the arbitration by complex, delay-ridden, and expensive litigation over issues tangential to the underlying substantive dispute. The First Circuit in *New England Energy, supra,* expressed concern over whether there had been an "attempt ... to divert a case from arbitration to court." 855 F.2d at 6–7. If courts readily took jurisdiction over procedural issues ancillary to the substantive dispute between the parties, arbitration proceedings would be vulnerable to frequent and expensive interruptions and delays. Suppose, for example, an arbitration proceeding was occurring in the City of New York and a witness residing in Boston became so ill that she could not travel to New York. Would it be up to the arbitrators to decide whether to permit testimony to be given in Boston, or would the party opposing such an idea be free to file a motion for injunctive relief in a United States District Court? Of course, the issues before me are not analogous to this extreme example. Fidelity to the policy of the FAA requires, however, that some limit on court intrusion into arbitration procedures be set. No bright-line limit having been established by precedents, I conclude that at least it is appropriate not to decide at this time, in this case, where this arbitration should occur.

Acknowledging that "the [Federal Arbitration] Act '*requires* piecemeal resolution when necessary to give effect to an arbitration agreement,' " *id.* at 9 (Selya, J., dissenting) (citing *Moses H. Cone,* 460 U.S. at 20, 103 S.Ct. at 939), I have concluded that in order "to give effect to," and facilitate arbitration under, the arbitration agreement between the parties in this case, it is most appropriate to decide only the two issues determined in Parts III, IV, and V of this Opinion—that is (1) the underlying dispute is arbitrable, and (2) the AMEX window is open.

Among the factors weighing in favor of such an abstention-like determination is the fact that the likelihood of any prejudice

from this determination is low in comparison with that from undertaking decision of more issues now, and the fact that any prejudice shown might be redressed by an order entered after reopening the case for good cause.

For the foregoing reasons, I will dismiss without prejudice the requests of the parties for decision at this time of their ancillary procedural disputes about where a request for arbitration may, or must, be filed, and where the arbitration may, or must, be held.

## VII.

For the foregoing reasons, it is ORDERED:

(1) Plaintiffs' various requests for an order compelling arbitration on terms specified in those requests are denied.

(2) Defendant Jane Brady's Motion to Dismiss is denied.

(3) A declaratory Final Judgment consistent with the foregoing Opinion will be entered unless, at a hearing set for 12:30 p.m., November 27, 1991, good cause is shown in factual or legal submissions for not doing so. A reasonable extension of the time for the hearing will be allowed if either party requests it.

## SUPPLEMENTAL OPINION

### I.

At a conference of record on December 5, 1991, the court allowed counsel further time to consider whether they could reach a stipulation as to the form of judgment to be entered in this case pursuant to the court's Opinion of November 21, 1991. On December 13, 1991, the parties filed a document, without any written stipulation or explanation, in the following form:

This action having come on for hearing before the Court on plaintiffs' Petition for Injunction and Order Compelling Arbitration and defendant's Motion to Dismiss, and the issues having been duly heard and a decision rendered, as set forth in an Opinion dated November 21, 1991,

It is Ordered, Adjudged and Declared that judgment is hereby entered in accordance with that Opinion, a copy of which is attached hereto.

I conclude that this proposed form of judgment is not in compliance with the Federal Rules of Civil Procedure and First Circuit precedents interpreting them. "Every judgment shall be set forth on a separate document." Fed.R.Civ.P. 58. The proposal submitted by the parties would violate this requirement by directing the reader to some unspecified part of an attached document (the Opinion of November 21, 1991) to ascertain the terms of the judgment. That attached document says "[a] *declaratory* Final Judgment consistent with the foregoing opinion will be entered unless, at a hearing ... good cause is shown ... for not doing so." Opinion of November 21, 1991, VII(3) (emphasis added). Quite apart from the failure of the proposed form of judgment to speak in any way to whether "good cause" was shown at the hearing for any modification, the separate document that is the *declaratory* judgment must specify the declaratory relief on its face and not by reference to another document.

### II.

One of the issues raised by the court at the conference of December 5, 1991 was whether either party would wish to contend, either before this court or on appeal, that this court's abstention-like determination explained in Part VI of the Opinion is inconsistent with the Federal Arbitration Act and, in particular, with the following provision:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties *stay the trial of the action* until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Does this provision imply that the civil action shall remain on the docket of the court for the duration of the stay so ordered?

Both parties have failed to file any submission addressing this and related questions, though explicitly invited by the court to do so. It might therefore be argued that they are now precluded from asserting that the abstention-like determination of this court is contrary to 9 U.S.C. § 3. I conclude that I should nevertheless address the issue because it may be regarded as jurisdictional in nature and the court should not act beyond its jurisdiction even with the consent of the parties, express or implied.

The phrase emphasized in the quotation from section 3 declares that the court "shall ... stay the trial of the action...." *Id.* I conclude that "the trial of the action" refers to a trial on the merits of the underlying controversy over Brady's accounts and transactions with the plaintiffs. This reading of section 3 is reinforced by the opening phrase, "[i]f any suit ... be brought ... upon any issue referable to arbitration...." No party to this case, in any of the pleadings filed, has asked this court to conduct a trial on any "issue [of the underlying controversy that was] referable to arbitration." No such trial having been sought even in the alternative, I conclude that 9 U.S.C. § 3 presents no barrier to the abstention-like determination explained in Part VI of the Opinion of November 21, 1991. Section 3 simply does not apply to this case.

### III.

At the hearing of December 5, 1991 and in the submission filed on December 13, 1991, no party has shown any cause for modification of any of the conclusions stated in the Opinion of November 21, 1991. Unless, by a written submission filed on or before January 14, 1992 good cause is shown for modification of the conclusions reached in that Opinion and in this Supplemental Opinion, Final Judgment will be entered forthwith, on a separate document, in the form attached as Exhibit A.*

### FINAL JUDGMENT

For the reasons stated in the Opinion of November 21, 1991, and the Supplemental Opinion of January 8, 1992, it is ORDERED:

Declaratory Relief as follows is allowed:

1. Plaintiff Shearson Lehman Brothers, Inc. and defendant Jane Brady entered into a brokerage agreement containing a provision for arbitration of any controversy arising out of or relating to any of Brady's accounts or to transactions with Shearson Lehman, its officers, directors, agents, and/or employees, including plaintiffs Gerald W. Helmich and Larry J. McKenny.

2. Controversies concerning the rights of defendant Brady (other than the right to arbitration) under this agreement have arisen between the plaintiffs and defendant Brady, and these controversies are subject to arbitration in accordance with the arbitration provision of the agreement.

3. Under the terms of the arbitration provision of the agreement between the parties, defendant Brady was and is free to elect arbitration pursuant to the procedures of the American Arbitration Association.

4. This declaratory judgment leaves other issues in dispute to be addressed, in the first instance at least, by the American Arbitration Association and the arbitrators selected under its procedures. This judgment is without prejudice to any motion that may be filed by any of the parties to reopen this case and seek additional relief after arbitration proceedings or other changed circumstances.

Each party shall bear its own costs.

* Exhibit A has been omitted from publication. Its content is contained in the Final Judgment published herewith.