**VILLA MARINA YACHT SALES, INC., et al., Plaintiffs, Appellants,**

v.

**HATTERAS YACHTS, et al., Defendants, Appellees.**

**No. 91–1411.**

United States Court of Appeals, First Circuit.

Heard Sept. 10, 1991.

Decided Oct. 22, 1991.

Rehearing and Rehearing En Banc Denied Dec. 2, 1991.

Michael J. Rovell with whom Lisa I. Fair, Law Offices of Michael J. Rovell, Gerardo A. Carlos, Carlos & Troncoso, Carlos Latimer, and Ramirez, Latimer & Biaggi were on brief, for appellants.

Rossell Barrios–Amy with whom McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz–Suria were on brief, for appellees.

Before SELYA, Circuit Judge, COFFIN and TIMBERS,* Senior Circuit Judges.

* Of the Second Circuit, sitting by designation.

COFFIN, Senior Circuit Judge.

This appeal requires us to consider, for the second time, whether the district court properly ordered dismissal under the abstention-like doctrine established in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Approximately one year ago, we remanded this case because it was unclear whether the court had given due weight to the heavy presumption in favor of retaining jurisdiction. *See Villa Marina Yacht Sales v. Hatteras Yachts*, 915 F.2d 7 (1st Cir.1990). Upon reconsideration, the district court renewed its decision to dismiss; appellants accordingly renewed their challenge to the dismissal. We conclude that appellants' arguments fall short of demonstrating an abuse of the court's discretion, and we therefore affirm.

## I. *Background*

Although we recited the facts of this case in some detail in our prior opinion, a reprise seems necessary to provide context for our present analysis. We see no need to rearrange the particulars, however, and therefore repeat verbatim most of the factual summary that appeared in our earlier decision. *See* 915 F.2d at 8–9.

"This case arises out of a dealership agreement between Hatteras International, a manufacturer of luxury boats, and Villa Marina Yacht Sales, Inc.,[1] Hatteras' longtime exclusive dealer in Puerto Rico and the Caribbean. In September 1988, Hatteras notified Villa Marina by letter that Hatteras was terminating the relationship because of concerns about Villa Marina's business ethics and sales performance.

"Through correspondence, Villa Marina strongly objected to the termination and contested the bases for the decision. Nevertheless, in November, Hatteras executed a dealership agreement with Hatteras Yacht Sales of Puerto Rico, Inc. ("Yacht

Sales"), naming it Hatteras' new exclusive dealer in Puerto Rico. Yacht Sales is owned by Pedro Rivera Fullana, who left his position as sales manager at Villa Marina to open the new distributorship.

"Three different lawsuits followed shortly after these events. On January 9, 1989, Hatteras filed the first action against Villa Marina in Puerto Rico Superior Court. The company sought a declaratory judgment that Commonwealth law permitted termination of the Villa Marina dealership agreement, and injunctive relief barring Villa Marina and its agents from interfering with the sale of Hatteras products by Yacht Sales. On February 7, Villa Marina answered and counterclaimed for damages under the Puerto Rico Dealer's Act, known as Law 75, P.R.Laws Ann. tit. 10, § 278 et seq. (1978), which prohibits a manufacturer from terminating a dealer's contract in the absence of 'just cause.'

"Three days later, Villa Marina and its president, Eduardo Ferrer Bolivar, filed a *separate* action in the local court against Yacht Sales, Yacht Sales' president (Rivera), and the president of Hatteras International, Herbert Pocklington, alleging tortious interference with the dealership agreement between Hatteras and Villa Marina, and damage to reputation. On May 19, however, Villa Marina moved for dismissal without prejudice of the claims against Pocklington, apparently in preparation for the third lawsuit, which it filed a few days later in federal court against Pocklington, Hatteras Yacht, Hatteras International and Hatteras' parent corporation, Genmar Industries, Inc.[2] This suit alleges violations of Law 75, breach of contract, tortious interference with prospective business advantage and tortious interference with contracts."

Defendants moved to dismiss or stay the federal case under the *Colorado River* doctrine in light of the "substantially similar[ ]" action pending in the Common-

---

**1.** Two affiliated companies, Villa Marina Yacht Harbor, Inc., and San Juan Bay Marina, Inc., also were joined as plaintiffs in this case. For the sake of convenience, we shall refer to them collectively as Villa Marina throughout this opinion.

**2.** Hatteras Yacht and Hatteras International are both unincorporated divisions of Genmar Industries. Villa Marina's contract was with Hatteras International, and references to "Hatteras" throughout this opinion generally refer to that company.

wealth court. As noted above, the district court twice has dismissed the complaint based on that doctrine. In this appeal, Villa Marina for the second time contends that the court misapplied the law in reaching its result.[3]

## II. *The Colorado River Doctrine*

The Supreme Court in *Colorado River* established a narrow basis for the stay or dismissal of federal lawsuits in deference to parallel state proceedings. The Court held that, in certain "exceptional" circumstances, 424 U.S. at 818, 96 S.Ct. at 1246–47, a federal court could decline jurisdiction based on " 'considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," ' " *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 14–15, 103 S.Ct. 927, 936–37, 74 L.Ed.2d 765 (1983) (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952))).

The Court in *Colorado River* set out four illustrative factors to be considered in determining whether "exceptional circumstances" exist: (1) whether either court has assumed jurisdiction over a *res;* (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation, and (4) the order in which the forums obtained jurisdiction. In *Moses H. Cone,* the Court added two additional elements: (5) whether state or federal law controls, and (6) the adequacy of the state forum to protect the parties' rights. Another factor considered by some courts is the vexatious or reactive nature of the federal lawsuit, *see, e.g., Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) (listing 10 factors). *See also Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 309–310 (1st Cir.1986) (affirming district court dismissal and expressing displeasure at practice of filing federal action in reaction to adverse ruling in state court); *Me-*

*dema v. Medema Builders, Inc.*, 854 F.2d 210, 213 (7th Cir.1988) (*Colorado River* doctrine necessary "to ensure judicial economy and deter abusive 'reactive' litigation").

In creating the *Colorado River* doctrine, the Supreme Court also was careful to limit it. The Court acknowledged the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," 424 U.S. at 817, 96 S.Ct. at 1246, and cautioned that "[o]nly the clearest of justifications will warrant dismissal," *id.* at 819, 96 S.Ct. at 1247. To ensure that dismissals occur only in exceptional circumstances, the district court must weigh the relevant factors "with the balance heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937.

■ The decision whether to surrender jurisdiction is "necessarily left to the discretion of the district court in the first instance," *Moses H. Cone*, 460 U.S. at 19, 103 S.Ct. at 938, and the district court's decision may be reversed only for an abuse of that discretion. Such discretion must be exercised, however, within the constraints of the exceptional circumstances test, *id.*

## III. *Application of the Doctrine*

We remanded this case a year ago because the district court's original analysis indicated that it had neglected to give due weight to the presumption in favor of retaining jurisdiction. *See Villa Marina*, 915 F.2d at 13. On remand, the district court held a non-evidentiary hearing in which both sides articulated their views regarding the balance of factors, and the parties subsequently submitted lengthy memoranda in support of their positions. In deciding again that dismissal was appropriate under *Colorado River*, the district court wrote a thorough opinion discussing its view of each of the relevant factors. The court therefore fulfilled the obligation set out in *Colorado River* to make a "carefully considered judgment[,] taking into account

---

**3.** In our prior opinion, we also addressed the district court's dismissal of defendant Pockling-ton for lack of personal jurisdiction. *See* 915 F.2d at 9–11. That issue is not part of this appeal.

both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise," 424 U.S. at 818–19, 96 S.Ct. at 1247.

The court summarized its conclusions as follows:

> While under *Colorado River*'s "exceptional circumstances" test a strong presumption in favor of the exercise of jurisdiction exists, we find that the following exceptional circumstances warrant dismissal in deference to the concurrent Superior Court proceeding. First, the vexatious and reactive nature of this federal litigation is shown by the fact that Villa Marina filed the federal suit only after the Commonwealth Court rejected its application for a preliminary injunction and the fact that two weeks after we had dismissed this case, plaintiff's president, Ferrer, brought essentially the same claim in a *second* federal action.[4] *See Moses H. Cone Hospital*, 460 U.S. at 17–18 n. 20, 103 S.Ct. at 937–38 n. 20. Second, whether a claim under Article 1802 for tortious interference with prospective business advantage exists is a sufficiently novel question of law to qualify as a "rare circumstance" weighing against the exercise of jurisdiction. *Moses H. Cone Hospital*, 460 U.S. at 25–26, 103 S.Ct. at 941–42. Third, the continuance of this suit would have the effect of defeating the removal policy of 28 U.S.C. § 1441. Fourth, the Commonwealth action, although instituted shortly after the federal suit is far more advanced since it has involved more substantial proceedings, including hearings and two interlocutory orders granting or denying temporary relief.

■ Villa Marina challenges the district court's determination that these factors render this a sufficiently exceptional case to warrant dismissal, and also argues that the court failed to give due weight to other factors that support retention of jurisdiction. We have given these contentions careful attention, but conclude that the district court's decision to dismiss under *Colorado River* was within its discretion. We explain our conclusion by examining the relevant factors.

■ At the outset, however, we note that there has been no serious dispute that the federal and Commonwealth actions are sufficiently parallel to trigger the *Colorado River* doctrine. Villa Marina states in its brief that not all of the federal issues are included within the Commonwealth action, but perfect identity of issues is not a prerequisite for dismissal. *See LaDuke v. Burlington Northern R.R. Co.*, 879 F.2d 1556, 1559 (7th Cir.1989); *Arkwright–Boston Mfg. Mutual Ins. Co. v. City of New York*, 762 F.2d 205, 212 (2d Cir.1985).

We turn to our analysis of the factors relied upon by the district court in declining jurisdiction, and begin by noting that two listed by the Supreme Court in *Colorado River*—jurisdiction over a *res* and convenience—have no impact in this case. *See* Opinion at 532. The remaining factors, which require more attention, are addressed in the order of priority apparently given to them by the district court.

*Motivation.* Villa Marina argues that the district court had no basis for finding this lawsuit to be either vexatious or reactive. It claims that the district court found vexatiousness based solely on the conclusion reached by another district judge in the other federal case that *that* action was vexatious. It is true that the court discussed only the subsequent federal lawsuit in explaining its finding of vexatiousness. It may be, however, that the court concentrated on that case because it believed it to be the most egregious example of Villa Marina's repetitive lawsuits. But even if the court improperly "borrowed" the finding of vexatiousness—a point we do not decide—its error would be of little effect in the balance of factors because, as we discuss below, the court supportably found this lawsuit to be reactive.

■ Villa Marina claims that the district court improperly disregarded an affidavit by its president, Ferrer, which explains his motivation for filing the present action in federal court and rebuts any notion that

---

**4.** This second federal suit, which was dismissed, is the subject of a separate appeal.

the suit was reactive. In the affidavit, Ferrer states that he brought the second lawsuit after another company, Bertram Yacht, also terminated his distributor agreement, allegedly as a result of interference by Hatteras. He decided to file the new claims in federal court, he explained, because of the unavailability of jury trial in the Commonwealth system, the ability to choose counsel who does not speak Spanish and the ability to appeal as of right. Appellant contends that the district court had to credit Ferrer's statements because the affidavit was unopposed and no contrary evidence was heard by the court. Because the court was required to accept the affidavit as true, it was precluded from characterizing the federal complaint as reactive.

We disagree that the court was so limited in its power. We subscribe to what Professor Moore has termed "the general view" with respect to factual issues arising in connection with "a jurisdictional or related type of motion," J. Moore & J. Wicker, 6 *Moore's Federal Practice* ¶ 56.03 at 56–59– 56–60 (1990), namely that "the court has a broad discretion as to the method to be used in resolving the factual dispute," *id.* In addition, we have held that a party opposing a jurisdictional challenge is given an appropriate opportunity to present facts in support of its position when such facts are presented by affidavit, deposition *or* in an evidentiary hearing. *See Berrios v. Department of Army*, 884 F.2d 28, 33 (1st Cir.1989). Thus, the district court properly heard Villa Marina's cause by means of Ferrer's affidavit, and we may reverse its finding that the lawsuit was reactive only if it clearly erred. *See* 2A J. Moore & J. Lucas, 2A *Moore's Federal Practice* ¶ 12.- 07[2.–1] at 12–49 (1990).

We find no clear error. The district court was entitled to find the facts based on Villa Marina's actions rather than on Ferrer's statements. Villa Marina initially chose the Commonwealth forum in which to file claims arising out of its relationship with Hatteras, showing no concern for the lack of jury trial, right to appeal or limita-

tion of qualified counsel.[5] In light of that earlier choice, the district court was not clearly wrong to conclude that the decision to switch to federal court stemmed from Villa Marina's unsuccessful effort to obtain a preliminary injunction in the Commonwealth court. The district court therefore legitimately counted the motivation factor against retaining jurisdiction.

*Novel question of state law.* The district court ruled that Villa Marina's claim for tortious interference with prospective business advantage presented sufficiently novel issues of Commonwealth law to qualify as a "rare circumstance[ ]," *Moses H. Cone*, 460 U.S. at 26, 103 S.Ct. at 942, favoring dismissal. As we noted in our prior opinion, "[c]ourts generally have agreed that rare circumstances exist only when a case presents 'complex questions of state law that would best be resolved by a state court,' " *Villa Marina*, 915 F.2d at 15 (citing cases). Villa Marina asserts that the tortious interference claim at issue here is routine because the tort of interference is widely recognized and included in the Restatement of Torts. *See* Restatement (Second) of Torts § 766B.

We conclude that the district court justifiably considered this factor to weigh in favor of dismissal. Puerto Rico courts do not necessarily follow the "Anglo American approach" to the law, *Dolphin International of Puerto Rico, Inc. v. Ryder Truck Lines Inc.*, 91 J.T.S. 13 (Jan. 31, 1991) (Certified Translation in Appellee's Brief, App. 24, 32), and it is far from certain that Puerto Rico would adopt a non-contractual interference claim in these factual circumstances simply because a majority of state courts would do so. Several years ago, on the related question of whether the Commonwealth recognizes a cause of action for tortious interference with contract, the district court deemed it prudent to certify the issue to the Puerto Rico Supreme Court. *See General Office Products v. A.M. Capen's Sons, Inc.*, 780 F.2d 1077, 1079 (1st Cir.1986). We cannot fault the district

---

**5.** We recognize that the claims against Yacht Sales and its president, Rivera, could not have been filed in federal court because of lack of

diversity. Federal jurisdiction was an option, however, for Pocklington, who was an original defendant in the Commonwealth suit.

court's finding that this is a similarly substantial question of Commonwealth law, and that resolution in the Commonwealth's courts is preferable. *Cf. Giardina v. Fontana*, 733 F.2d 1047, 1051 (2d Cir.1984) ("garden variety" federal diversity case applying well-settled state law principles).[6]

*Order of Jurisdiction/Relative Progress.* The district court also weighed in favor of dismissal its determination that the Commonwealth action had progressed substantially further than the federal case. *See* Opinion at 532. The court noted that, in addition to the injunction hearing, a pretrial report had been filed in the Commonwealth action and ten depositions have been completed. In the federal action, in contrast, Hatteras has yet to answer the complaint and little discovery has taken place.

Villa Marina argues that whatever progress has occurred in the Commonwealth action has not advanced that litigation relative to the federal lawsuit because any evidence developed thus far could be used in either case. In addition, Villa Marina argues that certain issues are more developed at the federal level than in the Commonwealth court. It cites, for example, the question of personal jurisdiction over Hatteras' president, Pocklington, which this court resolved in the prior appeal. Moreover, Villa Marina argues that it would· be unfair to consider progress made in the Commonwealth action during the time the federal case was held in abeyance following the district court's original dismissal.

Even granting Villa Marina some leeway because of the eight months of stalled action, we believe the district court properly considered this factor in favor of dismissal. The preliminary injunction hearing, which produced multiple volumes of transcript, covered the merits of the Law 75 claim, and thus represented significant development of the case. Although we do not doubt that the transcript could be admitted as evidence in the federal case, it would negate entirely the relevance of the progress factor if we discounted what occurred in the state forum merely because it could be transferred to the federal one. In short, transferability of transcripts cannot automatically trump relative progress. Although some aspects of the case may be more developed in the federal action, the bottom line is that the Commonwealth case overall is markedly more advanced.

*Piecemeal litigation.* In our prior opinion, we observed that a federal lawsuit should not be dismissed in deference to state litigation simply because two courts would be deciding related—or even the same—issues. Instead, "the district court must look beyond the routine inefficiency that is the inevitable result of parallel proceedings to determine whether there is some exceptional basis for requiring the case to proceed entirely in the Commonwealth court." 915 F.2d at 16. The district court on remand explicitly referred to our cautionary language on this factor, but nevertheless determined that the factor favored dismissal because of the manner in which the parties have behaved. According to the district court, "both parties have attempted to stall the proceedings in the

---

6. In *Dolphin International of Puerto Rico, Inc. v. Ryder Truck Lines Inc.*, 91 J.T.S. 13 (1991), the Puerto Rico Supreme Court suggested that Commonwealth law would *not* recognize a tortious interference claim without an underlying contractual obligation:

> In our jurisdiction we have established that, as an indispensable requirement to initiate an action for culpable interference, there must exist a contract with which a third party interferes. The action cannot prosper when what is affected is a mere expectancy or a beneficial economic relationship.

Certified Translation, Appellee's Brief, App. 24, 32–22.

Villa Marina has not argued that *Dolphin International* settles the viability of its non-contractual tortious interference claim, making it unnecessary for the issue to be heard in Commonwealth court. Nor has Villa Marina argued that the state law factor should not weigh toward dismissal because the Commonwealth action lacks an explicitly named "tortious interference" count. *See* Appellee's Brief at 28 (suggesting that tortious interference claim made in federal lawsuit is equivalent to Commonwealth suit's commercial defamation claim).

forum that they found most likely to rule in its favor," 762 F.Supp. 1007, 1009. The court therefore concluded that this case involved more than "routine inefficiency," and that litigation in a single forum was necessary. We consider this a legitimate judgment, both factually and legally.

*Removal policy.* We discussed at some length in our prior decision the possible impact of removal policy on a court's *Colorado River* decision. *See* 915 F.2d at 14. The district court determined that the policy should have some weight, and that it operated against Villa Marina's desire to litigate in federal court.

> To allow Villa Marina to proceed here is tantamount to removal because it would have the effect of allowing a plaintiff, who initiates an action in state court [ ], to remove it to federal court when he feels that events in the state court have taken an unfavorable turn. In cases like this one, a plaintiff should not be allowed to circumvent the policy of [28 U.S.C.] Section 1441 which "reflect[s] a Congressional intent that a plaintiff should not be permitted to alter the forum that it selects to litigate its claim against a particular defendant." [*American Int'l Underwriters v. Continental Ins. Co.,* 843 F.2d 1253, 1261 (9th Cir.1988).]

Opinion 762 F.Supp. at 1010.

Villa Marina argues that removal policy should be given no weight because a plaintiff is entitled to file a lawsuit in state court, dismiss it and then refile the same action in federal court. In such a case, Villa Marina asserts, the defendant is not permitted to seek remand to the state court even if the plaintiff concedes that the only reason for the dismissal and refiling was to obtain a more favorable forum.

Villa Marina's point with respect to forum selection, generally, is well taken. The problem with its argument in the context of this particular litigation, however, is that plaintiffs who *dismiss* their state lawsuits have eliminated much of the duplication and consequent waste of judicial resources that federal court abstention under the *Colorado River* doctrine is designed to prevent.

■ A more cogent point, made in Villa Marina's reply brief, is that its two lawsuits are not identical. Indeed, as we noted in our prior opinion, 915 F.2d at 14, Villa Marina's federal claims do not duplicate the claims that *it* filed in the Commonwealth court, and the defendants in each suit also are different. Villa Marina arguably dismissed Pocklington from the Commonwealth lawsuit precisely to avoid unnecessary duplication. Moreover, Villa Marina does not have the option of litigating its entire case in the federal court because the remaining Commonwealth defendants share its citizenship and would negate the diversity basis for jurisdiction.

In effect, then, Villa Marina's forum-shopping in its litigation against Pocklington is permissible because, before filing the federal lawsuit, it dismissed him from the Commonwealth case. To the extent Villa Marina's forum-shopping was motivated by reasons we would not wish to condone—such as reaction to an adverse ruling—it is more appropriately counted in the balance as related to the "motivation" factor than to removal policy. We conclude, therefore, that whatever its relevance in other cases, removal policy does not operate in favor of dismissal here.

■ *Adequacy of the State Forum.* The district court held that this factor supported dismissal because the parties and issues in the federal lawsuit could be joined to the Commonwealth case. In our view, the fact that the claims brought in the federal lawsuit also could be brought in state court does not promote dismissal, but is significant only as an indication that dismissal—if affirmatively warranted based on other factors—would not prejudice the federal court plaintiff. *See Moses H. Cone,* 460 U.S. at 26–27, 103 S.Ct. at 942–43 (discussing *in*adequacy of the state-court proceeding to protect the plaintiff's rights); *Burns v. Watler,* 931 F.2d 140, 147 (1st Cir.1991) (adequacy factor " 'operates against the surrender of jurisdiction only when the state forum may not be adequate to adjudicate the claims' " (quoting *Rojas–Hernandez v. Puerto Rico Elec. Power Auth.,* 925 F.2d 492, 496 (1st Cir.1991))).

We therefore disagree with the district court's use of this factor.

 Indeed, in our view, Villa Marina makes a viable argument that the adequacy factor weighs against dismissal. As noted above, *see supra* at p. 533, Villa Marina's president, Ferrer, stated in an affidavit that the company filed the federal action to obtain a jury trial, the absolute right to appeal and the counsel of its choice. Although the district court was free to discredit Ferrer's statement of his primary motivation, the availability in federal court of this trio of significant options does mean, on an objective level, that federal court will be more advantageous for many litigants in Puerto Rico. The impact of these options could not, of course, be dispositive if the *Colorado River* doctrine is to operate in the Commonwealth. Generally, however, their availability would weigh toward retention of federal jurisdiction, and we see no reason why it should not do so in the circumstances of this case. We therefore conclude that the district court erroneously counted the forum adequacy factor in favor of dismissal.

Our review of the various *Colorado River* factors demonstrates that the district court had substantial bases for its decision to dismiss. Although two of the factors on which it relied—removal policy and adequacy of the forum—support retention of jurisdiction rather than dismissal, these were not of primary importance in the decision. The Supreme Court has instructed that "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case...." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937. We think it beyond dispute that the district court would have made the same judgment based solely on the remaining factors—motivation, novel

local law, relative progress of the cases and piecemeal adjudication. And, regardless of our own inclinations, we are unable to say that the court abused its discretion in holding that the factors here, in combination, constitute "exceptional circumstances" outweighing the heavy presumption in favor of jurisdiction. Accordingly, we affirm its conclusion that "the realities of the case at hand," *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 940, favor deference to the Commonwealth action.[7]

AFFIRMED.

**7.** It is worth noting that the decision to dismiss this diversity case does not conflict with the important goal of diversity jurisdiction to protect out-of-state parties from bias in state fora, *see Gonzalez v. Cruz,* 926 F.2d 1, 5 n. 5 (1st Cir.1991). It is the Puerto Rico resident, Villa Marina, which seeks to litigate in federal court, while the non-resident Hatteras wishes to litigate the entire case in Commonwealth court. In *Gonzalez,* we observed that the Ninth Circuit, in applying the *Colorado River* doctrine, "has found it significant that '[t]he ordinary justification for having jurisdiction over diverse citizens is not present ...,'" *id.* (quoting *Microsoftware Computer Systems v. Ontel Corp.,* 686 F.2d 531 (7th Cir.1982)).