The **PAUL REVERE VARIABLE ANNUITY INSURANCE COMPANY, The Paul Revere Corporation, The Paul Revere Life Insurance Company, The Paul Revere Protective Life Insurance Co., Provident Companies, Inc., and Provident Life and Accident Company, Petitioners,**

v.

**Douglas E. THOMAS, et al., Respondents.**

**Civil Action Nos. 98–40139–NMG to 98–40155–NMG.**

United States District Court, D. Massachusetts.

Sept. 13, 1999.

Bonnie Pierson–Murphy, Patrick W. Shea, Paul, Hastings, Janofsky & Walker, Stamford, CT, Joseph M. Hamilton, Mirick, O'Connell, DeMaiie & Lougee, LLP, Worcester, MA, for Plaintiffs.

Francis A. Ford, Worcester, MA, Glen DeValerio, Michael G. Lange, Berman, DeValerio & Pease, Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

The six petitioner companies have filed 17 related cases in this Court seeking to compel arbitration of 17 actions brought against them in state court by former employees. Pending before this Court are the motions of the 17 individuals to dismiss the petitions to compel arbitration (Docket No. 3 in each of the above-captioned cases).

### I. *Background*

The Petitioners consist of The Paul Revere Corporation and three of its wholly owned subsidiaries—The Paul Revere Variable Annuity Insurance Company ("Variable"), The Paul Revere Life Insurance Company and The Paul Revere Protective Life Insurance Co.,—(collectively "Paul Revere") as well as Provident Companies, Inc. ("Provident") and its wholly owned subsidiary Provident Life and Accident Company. All six Petitioners were named as co-defendants in 41 separate cases filed by 41 former employees of Paul Revere in the Trial Court of Massachusetts, Superior Court Department for Worcester County on October 8, 1997 (the "State Cases"). The 41 plaintiffs, each of whom held the title of "General Manager," allege that their employment contracts were unlawfully terminated following a merger between Paul Revere and Provident. Specifically, they claim that the terminations constituted a breach of contract (both express and implied) and a violation of several Massachusetts statutes.[1]

On January 15, 1998, the six defendant companies (the Petitioners in these instant cases) filed motions to dismiss in 40 of the

1. The plaintiffs assert claims against Provident on the theory that Provident is either the successor employer or the alter ego of Paul Revere.

41 State Cases. In 18 instances, they joined their motions to dismiss with motions to compel arbitration, arguing that all of those 18 former employees, by virtue of their registrations with the National Association of Securities Dealers ("NASD"), entered into agreements requiring them to arbitrate their disputes.

Of the six defendants in the State Cases, Variable is the only one that is a member of the NASD and, according to the former employees, is therefore the only entity capable of enforcing those arbitration agreements. After the companies filed their motions to compel arbitration, 15 of the 18 former employees voluntarily dismissed their claims against Variable. The companies contend that those dismissals were deliberate attempts by the former employees to escape their arbitration obligations.

On July 17, 1998, the Petitioners filed the instant cases in this Court with respect to the 17 disputes in which they could meet the diversity jurisdiction requirements of this federal court. Their petitions, which are brought pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3–4, seek orders that 1) compel arbitration and 2) stay the state court proceedings during the pendency of that particular arbitration. The 18th case remains pending in state court.

The 17 former employees named as defendants in the instant cases (the "Former Employees") have moved to dismiss the petitions. They argue that 1) this court should abstain pursuant to the principles announced in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), 2) the petitioners lack standing to compel arbitration, 3) the dispute is not subject to arbitration and 4) the Federal Anti–Injunction Act, 28 U.S.C. § 2283, prohibits the issuance of stays in these cases.

## II. *Colorado River Abstention*

### A. Overview of the Doctrine

■ The Former Employees seek to have the federal cases against them dismissed pursuant to the abstention doctrine announced by the Supreme Court in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The so-called *Colorado River* doctrine establishes a narrow basis for the stay or dismissal of a federal lawsuit in deference to parallel state proceedings. The doctrine provides that in certain "exceptional circumstances," a federal court should decline jurisdiction based on "considerations of 'wise judicial administration, giving regard to conservation of resources and comprehensive disposition of litigation.' " *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 14–15, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quoting *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236).

In *Colorado River,* the Supreme Court described four illustrative factors for a court to consider in determining whether "exceptional circumstances" exist: 1) whether the state or federal court has assumed jurisdiction over a res, 2) the inconvenience of the federal forum, 3) the desirability of avoiding piecemeal litigation and 4) the order in which the concurrent forums obtained jurisdiction. *Colorado River,* 424 U.S. at 818–19, 96 S.Ct. 1236. In *Moses H. Cone,* the Supreme Court added two additional elements: 5) whether state or federal law controls and 6) the adequacy of the state forum to protect the parties' rights. *Moses H. Cone,* 460 U.S. at 23–26, 103 S.Ct. 927. Another factor considered by many courts, including those in the First Circuit, is 7) the vexatious or reactive nature of the federal lawsuit, in other words the plaintiff's motivation for bringing the federal case. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 947 F.2d 529, 532 (1st Cir.1991) ("*Villa Marina II*").

■ The Supreme Court, in announcing the doctrine, took care to emphasize its narrowness. Because the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them,"

the Supreme Court cautioned that "[o]nly the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236. A district court must therefore consider the relevant factors "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. 927.

■ In sum, the party seeking to invoke the *Colorado River* abstention doctrine faces a heavy burden of proving the existence of "exceptional circumstances" which justify the surrender of jurisdiction by a federal court.

### B. Analysis of the Factors

The parties agree that two of the factors—jurisdiction over the res and inconvenience of the federal forum—are inapplicable to this case. The Former Employees rely upon the third, fourth, sixth and seventh factors.[2] The Petitioners contend that the fifth factor counsels against abstention.

### 1. The Order in Which Jurisdiction was Obtained (The Fourth Factor)

■ In considering the order in which jurisdiction was obtained, the Court must look not only to the chronological order in which the proceedings were initiated, but also the progress of the respective cases. *Moses H. Cone*, 460 U.S. at 21–22, 103 S.Ct. 927. A district court should be inclined to abstain in favor of a previously-filed state case that has progressed substantially farther than the federal case.

Here, the State Cases were filed on October 8, 1997. On January 15, 1998, the defendant companies moved to dismiss those State Cases and, alternatively, to compel arbitration. The plaintiffs in the State Cases filed their opposition to those motions on April 30, 1998. The Petitioners filed the instant actions in this Court on July 17, 1998.

■ With respect to the arbitration issue, it appears that this Court and the state court have progressed at roughly the same pace. At a hearing on March 10, 1999, the parties informed this Court that the Superior Court had scheduled a hearing on the arbitration issue for sometime in May, 1999. This Court is unaware of 1) what transpired at that hearing, if any, and 2) any ruling by the state court. Therefore, the order in which the jurisdiction was acquired does not favor abstention.

Although the parties have engaged in discovery in the State Cases, the progress of that discovery is irrelevant to the abstention issue because it relates to the merits of the complaints, not to the specific issue of arbitration pending before both courts. It is only the status of the arbitration issue that counts under this factor.

### 2. Adequacy of the State Forum (The Sixth Factor)

The Former Employees contend that the sixth factor, the adequacy of the state forum, weighs heavily in favor of abstention. This factor addresses the competence of the state court and its ability to serve as a fair forum for resolving a dispute.

Under the FAA, state courts have concurrent jurisdiction to determine arbitration issues. There is no doubt that both state and federal courts are equally competent to resolve the pending arbitration questions.

■ The Former Employees argue that this Court should therefore defer to the state court. Their position, however, misinterprets the significance of this factor, which is usually implicated as a reason for a federal court to retain jurisdiction, rather than as a reason to abstain. For example, if for some reason a state forum would

**2.** In their reply to the Petitioners' opposition to the motion to dismiss (Docket No. 16), the Former Employees raise, for the first time, the issue of piecemeal litigation but this Court will consider the issue nevertheless.

fail to protect the rights of one of the parties, a federal court would be more inclined to retain jurisdiction itself. In contrast, a determination that the state court is equally adequate does not provide a comparable policy reason for a federal court to abstain. Where, as here, the adequacy of the forums is not a concern, this factor is neutral in the *Colorado River* analysis.

### 3. Motivation for Filing the Federal Cases (The Seventh Factor)

The Former Employees rely most heavily on the factor regarding the Petitioners' motivation for bringing the instant cases. The motivation factor encompasses two central concepts. The first concept, "reactiveness," describes a situation where one party files a federal action in reaction to an adverse ruling in state court. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 915 F.2d 7, 15 (1st Cir.1991) ("*Villa Marina I*"). Courts express particular displeasure at this kind of forum shopping. *Id.* The second concept, "vexatiousness," ordinarily refers to a situation where one party files a federal action merely to cause a delay or to force the other side to incur the additional costs associated with litigating the same issue in two separate courts.

The Former Employees argue that the timing of the Petitioners' filing of the instant cases supports the conclusion that the Petitioners were being reactive and vexatious. The Petitioners first raised their arbitration argument in state court on January 15, 1998. On May 21, 1998, a Massachusetts Superior Court judge denied motions to dismiss filed by the Petitioners in two similar class-action cases pending in state court involving former employees who held titles different from those of the defendants in the instant cases.[3] The Former Employees in the instant cases hypothesize that the Petition-

ers, after losing those motions, filed their arbitration claims in federal court in an attempt to find a more sympathetic forum. The instant cases were filed on July 17, 1998.

The Petitioners dispute that contention and instead explain that the dismissal of Variable from the State Cases forced them to file a separate action to vindicate Variable's rights to have the pending disputes resolved in arbitration. They add that they chose the federal court rather than the state court because they believed it was the more appropriate forum for resolving a claim under the FAA.

Even if the Former Employees are correct about the motivation of the Petitioners, the actions of the latter do not rise to the level of reactiveness or vexatiousness necessary to warrant abstention, especially when considered in light of this Court's analysis of the other factors. The paradigm case of reactiveness involves a situation similar to the one presented in *Villa Marina,* where a plaintiff filed a motion for a preliminary injunction in federal court after losing the identical motion in state court. *Villa Marina II,* 947 F.2d at 533. In the instant cases, the nexus between the petitions to compel arbitration and the motions denied by the state court is significantly attenuated because the motions to dismiss did not involve the arbitration issue. This factor does not, therefore, favor abstention.

### 4. Piecemeal Litigation (The Third Factor)

The Former Employees further contend that abstention is appropriate to avoid piecemeal litigation and the potential for conflicting decisions of this Court and the state court. As an initial matter, this Court is the only forum for adjudicating Variable's rights to compel arbitration in the State Cases in which Variable has been

---

**3.** One class action involves individuals previously employed as "brokers" (*Eldridge et al. v. Provident Companies, Inc., et al.,* Civil Action No. 97–1294C) and the other involves individ-

uals previously employed as "career agents" (*Hughes et al. v. Provident Companies, Inc., et al.,* Civil Action No. 97–1099C).

dismissed. Nevertheless, a decision by this Court to retain jurisdiction would, indeed, result in duplicative litigation on the issue of whether the other Petitioners (not members of the NASD) have a right to compel arbitration, thus creating the potential for conflicting opinions.

▪ The pendency of an overlapping state court suit is, however, insufficient in and of itself to justify abstention. A federal lawsuit should not be dismissed in deference to state litigation simply because two courts would be deciding the same issue. *Villa Marina II*, 947 F.2d at 535. Instead, "the district court must look beyond the routine inefficiency that is the inevitable result of parallel proceedings to determine whether there is some exceptional basis for requiring the case to proceed entirely in the Commonwealth court." *Villa Marina I*, 915 F.2d at 16.

Because this Court has concluded that none of the other factors weighs in favor of abstention, the motion of the Former Employees to dismiss based on the *Colorado River* doctrine will be denied.

### III. *Standing*

The Former Employees contend that none of the Petitioners has standing to pursue the instant actions. To resolve the standing issue, this Court must consider the specific language of the arbitration agreements and determine the ability of the Petitioners to enforce their provisions.

#### A. Overview and Legal Framework

The Petitioners contend that each of the Former Employees, in connection with their employment with Paul Revere, registered with the NASD by filling out a Form U–4 Uniform Application for Securities Industry Registration or Transfer ("Form

U–4") or, in some cases, a predecessor version of that form.[4] Each listed Variable as the firm through which he sought registration. The Form U–4 contains the following provision:

> I agree to arbitrate any dispute, claim, or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register. . . .

Each of the Former Employees registered with the NASD.

Section 8(a) of the NASD Code of Arbitration ("NASD Code"), entitled "Required Submission" provides:

> Any dispute, claim or controversy eligible for submission under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) by and with such member, shall be arbitrated under this Code at the insistence of:
>
> (1) a member against another member;
>
> (2) a member against a person associated with a member or a person associated with a member against a member; and
>
> (3) a person associated with a member against a person associated with a member.[5]

The second part of Section 8(a) indicates who has a right to compel arbitration and the first part identifies the kinds of disputes that those parties may require to be arbitrated. *Thomas James Assoc., Inc. v.*

4. There is some dispute as to 1) whether certain Former Employees actually signed a Form U–4 and 2) whether the signing of a predecessor version of that document binds the signatory to the same obligations contained in the Form U–4. For the purpose of deciding the pending question, this Court will assume that each of the Former Employees is bound by the NASD's arbitration provisions.

5. Part I, a reference to Section 1 of the NASD Code, identifies the universe of disputes that may be resolved by arbitration.

*Jameson,* 102 F.3d 60, 64 (2nd Cir.1996); *Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 798 (10th Cir.1995). Only a "member" of the NASD or a "person associated with a member" can attempt to force an unwilling party to arbitrate a dispute eligible for arbitration.

The Former Employees argue that the petition to compel arbitration must be dismissed because none of the Petitioners has standing to enforce the NASD's arbitration provisions. In general, a party has standing to pursue a claim in court when he has a sufficient "personal stake in the outcome of the controversy." *Larson v. Valente,* 456 U.S. 228, 238–39, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982) (*quoting Duke Power Co. v. Carolina Envtl. Study Group,* 438 U.S. 59, 72, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978)). The requirement of a personal stake is satisfied if the party can identify a "distinct and palpable injury." *Id.* at 239, 102 S.Ct. 1673. Also relevant to the standing inquiry is a portion of Section 4 of the FAA, which provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court" for an order compelling arbitration. The standing inquiry therefore turns on whether any of the Petitioners has a right to compel arbitration under Section 8(a) of the NASD Code.

### B. Analysis

Although this Court has, up until this point, treated the 17 cases identically, differences between those cases now require that they be considered *seriatim,* or more accurately, in groups. The first group consists of the two cases in which Variable has not been dismissed from the underlying State Cases. They involve Respondents Arthur F. Zang, Jr. (Civil Action No. 98–40142) and Harold P. Beck (Civil Action No. 98–40147).

As stated above, Section 8(a) of the NASD Code provides that arbitration can only be compelled by a "member" or a "person associated with a member." The Respondents concede that Variable, as a "member" of the NASD, has standing to file a petition to compel arbitration in those two cases. The only contested issue in those cases is, therefore, whether the Petitioners other than Variable have standing to bring this action, either on their own or by virtue of the standing conferred on Variable. The Petitioners other than Variable will have standing to bring this action on their own only if they each qualify as a "person associated with a member."

The NASD By–Laws, Art. I, ¶ 1101(q) define "person associated with a member" as:

> every sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member....

It is clear from that definition that a corporation cannot be a "person associated with a member." The term is explicitly limited to natural persons. *See Gardner v. Benefits Communications Corp.,* 175 F.3d 155, 162 (D.C.Cir.1999); *Tays v. Covenant Life Ins. Co.,* 964 F.2d 501, 503 (5th Cir. 1992); *Gaghich v. Prudential Ins. Co. of America,* 1997 WL 128269 at *3 (W.D.N.Y. Mar.10, 1997); *Kresock v. Bankers Trust Co.,* 1993 WL 322807 at *2 (N.D.Ill. Aug.23 1993); *Cade v. Zions First Nat'l Bank,* 956 P.2d 1073, 1078 (Utah 1998). The Petitioners other than Variable therefore fail to qualify as "person[s] associated with a member" under the NASD's definition.

The Petitioners cite several cases, all from the Southern District of New York, holding that the definition of "person associated with a member" contained in the Securities Exchange Act of 1934 (the "Exchange Act") trumps the definition contained in the NASD By-laws. *Cular v.*

*Metropolitan Life Ins. Co.,* 961 F.Supp. 550, 556 (S.D.N.Y.1997); *Kurschus v. PaineWebber, Inc.,* 1996 WL 39326 at *3 (S.D.N.Y. Feb.1, 1996); *Edelman v. Marek,* 1992 WL 321715 at *7 (S.D.N.Y. Oct.23, 1992); *Chisolm v. Kidder, Peabody Asset Management, Inc.,* 810 F.Supp. 479, 481 n. 2 (S.D.N.Y.1992). The Petitioners further contend that they fit within the Exchange Act's definition and thus have a right to compel arbitration under Section 8(a) of the NASD Code.

This Court disagrees with the reasoning of the Southern District and instead follows the cases holding that a corporation cannot be considered a "person associated with a member" for the purpose of Section 8(a) of the NASD Code. The insertion of the word "natural" before the word "person" in the NASD's definition seems to have been deliberately calculated to exclude corporate entities. Moreover, this Court is not troubled by the fact that such a reading of the NASD's definition conflicts with the definition contained in the Exchange Act. The exclusion of corporate entities simply reflects a decision on the part of the NASD to adopt a narrower definition of "person associated with a member" than is contained in the Exchange Act, a result this Court finds both permissible and logical. *See Gaghich,* 1997 WL 128269 at *3 (noting that the SEC reviews and approves all NASD rules and By–Laws before they become effective).

Because the non-Variable Petitioners do not qualify as "persons associated with a member," they lack the ability to enforce the arbitration agreement on their own. Nevertheless, this Court finds that those Petitioners may be joined in the arbitration.

In *Parrott v. Pasadena Capital Corp.,* 1998 WL 91076 (March 3, 1998 S.D.N.Y.), the district court allowed the defendants' motion to compel arbitration where only one of six defendants was a member of the NASD. The Court held that the member defendant and non-member defendants were "closely affiliated," that the claims against them were "inextricably intertwined" and that the claims against the non-member Defendants "so overlap with the claims against the [member defendant] as to make [the non-member defendants] sufficiently immersed in the underlying controversy with [the member defendant]" that all the claims should be submitted to arbitration together. *Parrott,* 1998 WL 91076 at *4–5.

In the present case, Zang and Beck were employed by each of the Paul Revere companies under identical terms contained in a single employment agreement. Because their claims against Variable and the other Petitioners are based on that contract, they are all governed by the same set of facts and implicate the same legal arguments. Moreover, it is evident that the Petitioners are all closely affiliated with each other despite being organized as separate entities.

▆▆▆ This Court finds that the claims of Zang and Beck against Variable are inextricably intertwined with the claims against the other Petitioners. As such, the other Petitioners will be permitted to join the instant proceedings. The motion of defendants Zang and Beck to dismiss for lack of standing will therefore be denied.

The 15 other cases present a closer question: whether Variable, despite being dismissed from the State Cases, nevertheless has standing to force those cases to arbitration. If so, the Petitioners other than Variable will be allowed to join in that arbitration for the same reasons discussed above. If not, the motions to dismiss must be allowed because the non-Variable petitioners do not qualify as "person[s] associated with a member" and thus lack standing on their own to enforce the arbitration provisions.

Variable's argument on standing is that, despite the procedural maneuvers of the Former Employees, it still remains exposed to liability in the State Cases and

therefore has a sufficient stake in the outcome to enforce the arbitration provisions. Variable proffers two theories as to how it remains potentially liable. The first is based upon the nature of the dismissals. Variable notes that it was initially dismissed without prejudice in 12 of the State Cases. Although the plaintiffs subsequently filed dismissals with prejudice, Variable fears that the Former Employees could re-file the actions by arguing that their initial dismissals without prejudice terminated the cases, thus rendering the subsequent dismissals with prejudice nullities.

The Former Employees have, however, informed Variable and this Court that they 1) understand the dismissals to be with prejudice and 2) have no intention of ever pressing their claims against Variable. Furthermore, on May 6, 1999, the Former Employees filed 12 new complaints in the Superior Court for Worcester County in the cases involving the disputed dismissals and immediately filed voluntary dismissals with prejudice.

This Court is satisfied that the dismissals of Variable were effected with prejudice. It therefore concludes that Variable faces no exposure to future liability on the theory that it was dismissed without prejudice.

Variable's second theory is that, despite its dismissal from the State Cases, it still remains legally obligated to reimburse the remaining state-court defendants for Variable's equitable share of any liability that may be imposed against them. Variable contends that this exposure to liability provides it with a real interest in the resolution of the State Cases sufficient to confer standing to enforce the arbitration agreements.

Variable's argument is premised upon its interpretation of the General Manager Agreement signed by each of the Former Employees. That document is essentially the employment contract between each Former Employee and Paul Revere. In 12 of the 15 cases currently under consideration, the General Manager Agreement lists Variable, The Paul Revere Life Insurance Company and the Paul Revere Protective Life Insurance Company as parties to the agreement.[6] The three Paul Revere entities are then referred to collectively as "Paul Revere" throughout the remainder of the document. Each agreement is signed by the Former Employee and one individual on behalf of all three Paul Revere companies.

Variable contends that the General Manager Agreement imposes collective obligations on all three Paul Revere companies named as parties. The contract discusses the general terms of employment and compensation and obligates Paul Revere to pay the employee certain commissions and fees. Variable argues that the fact that it is a named party to that contract renders it potentially responsible for its share of any damages awarded against any of the other state-court defendants.

Variable asserts that where two or more parties to a contract promise the same performance to the same promisee, each is bound for the whole performance of that contract (citing *Restatement (Second) of Contracts*, § 289(1) (1981)). Furthermore, it contends that if one of the promisors satisfies a judgment under that contract, that promisor may seek equitable contribution from the other promisors (citing *Restatement (First) of Restitutions*, § 81 (1936)).[7] Moreover, Variable avers that

---

6. In the other three cases, the General Manager Agreement is between the employee and the Paul Revere Life Insurance Company only. Those cases involve James A. Samuel (Civil Action No. 98–40141), Robert A. Hanson (Civil Action No. 98–40150) and William E. Hudson (Civil Action No. 98–40153).

7. Because the Former Employees were employed in different states, this Court asked the parties to address the choice of law issues related to Variable's potential exposure to liability. Because the parties do not dispute that the relevant law is identical in each of the jurisdictions, this Court does not address any choice of law issues in this memorandum.

the right of contribution even applies to cases in which the party against whom contribution is sought has been dismissed from the underlying case (citing, among other cases, *Quintin v. Magnant,* 285 Mass. 450, 452, 189 N.E. 209 (1934). Although Variable admits that it would not likely be sued by the other Petitioners, it claims that it would nevertheless be required to satisfy its contribution obligations at arms length, thus leaving it exposed to liability in the State Cases.

The Former Employees contest both Variable's interpretation of its obligations under the General Manager Agreement and its legal arguments about contribution. With respect to the General Manager Agreement, the Former Employees argue that the contract actually creates three separate agreements between the employee and the three Paul Revere companies named as parties. Specifically, the Former Employees point to the first substantive sentence of the General Manager Agreement which states:

> You [meaning the employee] are hereby appointed an active full-time General Manager–Career for each Paul Revere Company with whom you become properly licensed.

All of the 12 Former Employees contend that they never had any business relationship with Variable or sold any of its products. (Tr. of Hrg. Mar. 10, 1999 at 11.) They argue that the quoted provision of the contract evinces an intention of the parties to enter into three separate agreements through one writing whereby each Paul Revere party becomes obligated to pay commissions only with respect to the insurance products issued by its company.

 This Court agrees with the contractual interpretation offered by the Former Employees. The first sentence of the General Manager Agreement limits the obligations of the parties despite the collec-

tive references to Paul Revere throughout the remainder of the contract.[8]

Moreover, to the extent that the contract is ambiguous as to the obligations of the Paul Revere entities, this Court construes the ambiguity against Paul Revere, the drafter of that agreement. *See Restatement (Second) of Contracts* § 206 (1981). Although this Court is mindful of the Supreme Court's pronouncement that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses Cone,* 460 U.S. at 24–25, 103 S.Ct. 927, that directive is inapposite here. Determining whether Variable remains exposed to liability involves the interpretation of an employment agreement not a determination about the scope of arbitrable issues.

Because this Court concludes that the General Manager Agreement imposes separate, rather than collective, obligations on the Paul Revere entities named as parties, Variable faces no prospect of future liability stemming from its inclusion as a party to that agreement in the State Cases from which it has been dismissed with prejudice. As such, Variable lacks standing to enforce the arbitration agreement in those 12 cases.

Furthermore, because Variable premises its theory of potential liability upon the General Manager Agreement, it likewise faces no exposure to liability in the three cases in which it is not even named as a party to that agreement. Variable lacks standing to enforce the arbitration agreement in those cases as well.

The motions to dismiss for lack of standing will therefore be allowed in the 15 cases in which Variable has been dismissed from the underlying State Cases.

Because this Court has, however, concluded that the Petitioners have standing in the cases involving Beck and Zang, this

---

8. Variable also bases its argument for continuing potential liability on the fact that the complaints filed in the State Cases refer to the obligations of all the defendants collectively.

Because the claims were dismissed against Variable, Variable is removed from the collective reference and therefore this argument is unavailing.

Court will address the remaining issues presented by the motions to dismiss.

## IV. *Insurance Business Exception*

The Former Employees argue that their claims against the Petitioners fall outside the scope of the arbitration provisions because of the insurance business exception contained in Section One of the NASD Code. That section exempts from the universe of potentially arbitrable claims those "disputes involving the insurance business of any member which is also an insurance company." NASD Code § 1.

The fact that Variable is an insurance company does not automatically mean that a dispute involves its "insurance business." To the contrary, courts have almost universally held that being employed by an insurance company is not enough to trigger the exception and instead examine the degree to which the pending claim is entangled with the company's insurance business. *Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 800 (10th Cir.1995) (claims of employment discrimination brought against insurance company did not involve insurance business of the defendant); *Cular v. Metropolitan Life Ins. Co.*, 961 F.Supp. 550, 558 (S.D.N.Y.1997) (breach of contract claim was a "garden variety" employment dispute not covered by the insurance business exception); *Vitone v. Metropolitan Life Ins. Co.*, 943 F.Supp. 192, 198 (D.R.I.1996) (inquiring whether a "comprehensive evaluation" of the defendant's insurance business would be required to resolve the plaintiff's claims); *Wojcik v. Aetna Life Ins. and Annuity Co.*, 901 F.Supp. 1282, 1291 (N.D.Ill.1995) ("exception may not be triggered simply because the dispute involves an insurance company"); *Young v. Prudential Ins. Co. of America*, 297 N.J.Super. 605, 688 A.2d 1069, 1081 (1997) (looking to whether insurance practices are "at the heart of the case").

 The instant dispute concerns the obligations of Paul Revere to its employees under the General Manager Agreements.

Although the dispute may tangentially implicate general insurance business concepts, that fact does not transform what is essentially an employment dispute into one that falls within the insurance business exception. With respect to the case cited by the Former Employees, *Hagan v. Minnesota Mutual Life Ins. Co.*, 721 So.2d 167 (Ala.1998), this Court simply disagrees with its holding that an employment dispute with an insurance company necessarily involves the insurance business of that company. That case is inapposite to the extensive authority reaching the opposite conclusion and this Court is unpersuaded by its reasoning.

## V. *The Federal Anti–Injunction Act*

The Former Employees argue that the Federal Anti–Injunction Act, 28 U.S.C. § 2283, requires this Court to deny the Petitioners' request to stay the state court proceedings pending arbitration, if such arbitration is ordered. This Court believes that it is premature to address the issue of a stay and will therefore deny that aspect of the petition without prejudice. The Petitioners may renew their request for a stay if and when it appears that the actions of the state court will conflict with a ruling of this Court.

### ORDER

For the foregoing reasons, it is hereby ordered as follows:

1) The motions of the Former Employees to dismiss in the cases filed against Douglas E. Thomas (Civil Action No. 40139), H.C. Tidwell, Jr. (Civil Action No. 40140), James E. Samuel (Civil Action No. 40141), Paul R. Zietlow (Civil Action No. 40143), Douglas W. Rodwell, Jr. (Civil Action No. 40144), David S. Nelson (Civil Action No. 40145), W. Ronald Anderson (Civil Action No. 40146), Kevin J. Carr (Civil Action No. 40148), Dominic W. Dinunzio (Civil Action No. 40149), Robert A. Hanson (Civil Action No. 40150), Christopher R. Herchold (Civil Action No. 40151),

Dennis R. Lindholm (Civil Action No. 40152), William E. Hudson (Civil Action No. 40153), Maureen A. Kirschhofer (Civil Action No. 40154), A. Bruce Kunkel, Jr. (Civil Action No. 40155) (Docket No. 3 in each of those cases) are ALLOWED. Those cases are hereby DISMISSED and all other motions pending therein are DENIED AS MOOT.

2) The motions of the Former Employees to dismiss in the cases filed against Arthur F. Zang, Jr. (Civil Action No. 40142) and Harold P. Beck (Civil Action No. 40147) (Docket No. 3 in those cases) are DENIED.

3) The Petitioners' request for a stay in the cases filed against Arthur F. Zang, Jr. (Civil Action No. 40142) and Harold P. Beck (Civil Action No. 40147) (Docket No. 1 in those cases) is DENIED WITHOUT PREJUDICE.

4) A status conference for further consideration of the petition to compel arbitration in the cases filed against Arthur F. Zang, Jr. (Civil Action No. 40142) and Harold P. Beck (Civil Action No. 40147) is hereby scheduled for Friday, Oct. 1, 1999 at 2:00 pm in Worcester.

So ordered.